In the Matter of JOHN OSCAR BALL, an Attorney, Respondent.

First Department, July 11, 1918.

**Attorney at law — suspension from practice — misconduct while acting as trustee.**

An attorney at law of many years of experience at the bar, suspended from practice for professional misconduct while acting as trustee of estates, in that he dealt personally with a trust estate, mingled the trust moneys with his own, and made a personal profit by receiving an unwarranted commission or bonus for a loan of trust money upon inadequate security, without the knowledge of his client.

The fact that by reason of surcharging his accounts the estates of which he was trustee ultimately suffered no financial loss, is not determinative of a proceeding to inquire into his professional conduct.

DISCIPLINARY PROCEEDINGS instituted by the Association of the Bar of the City of New York.

*Theodore B. Richter* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*A. P. Bachman*, for the respondent.

CLARKE, P. J.:

Respondent in May, 1883, was admitted to practice as an attorney and counselor at law at a General Term of the Supreme Court held in the county of Dutchess, and has since been practicing as such in the First Judicial District. In December, 1905, respondent was appointed by the Surrogate's Court, Kings county, executor of and trustee under the will of Mary Caulfield, deceased, and duly qualified. In April, 1912, proceedings were instituted in the Surrogate's Court to compel the respondent as trustee to account. Objection to the accounts rendered having been filed, an order was duly made referring the matter to a referee, who after taking testimony, filed his report April 16, 1913, surcharging the respondent as trustee with considerable amounts both as *corpus* and as to income. The court confirmed the report of the referee, with slight modifications as to amounts, and the decree entered thereon was subsequently affirmed by the Appellate Division and by the Court of Appeals. An application was made for the removal of the respondent as trustee and an order to that effect was entered. Subsequently and as a result of such proceeding the petition herein was presented to this court charging the respondent with unprofessional conduct and setting forth numerous specifications thereof.

The learned official referee has reported as to specifications " B " and " C " that the transactions alleged are not involved in contradictory evidence. The proof shows and the respondent substantially concedes as follows:

The respondent, as trustee, held a second mortgage on the premises 713 Henry street, Brooklyn, which he foreclosed in 1909 for non-payment of interest, and upon the sale he bid in the premises for the sum of $2,000. The respondent thereupon assigned his bid to Marian E. Smith, a stenographer in his employ, who signed a deed in blank and gave it to the respondent, and the respondent received for the assignment a new second mortgage for $1,500 and the deed was made to the said Marian E. Smith, who had no real interest therein. Until March 11, 1910, the premises remained in her name. They were taken by her subject to about $500 of taxes, assessments and interest, which the respondent thereafter paid but not with the moneys of the estate. There-

First Department, July, 1918.      [Vol. 184.

after the respondent borrowed from one John H. Martin, the fiancé of Miss Smith, $2,500 on the respondent's personal note and caused Miss Smith to execute and deliver to Martin a deed of the premises. The respondent deposited the $2,500 borrowed from Martin to his individual credit in his personal bank account. Thereafter and on September 1, 1910, respondent sold the said premises to Jennie M. Ogden, a resident of the State of Maryland, and a connection of his by marriage, for the sum of $9,500 and thereupon caused Martin to convey the said premises to her. Jennie M. Ogden paid the $9,500 by taking the premises subject to the mortgages and by paying $2,500 in cash.

There were three life tenants who were entitled to share in the income from the estate, namely, John A. Caulfield, Thomas Joseph Caulfield and Annie M. Caulfield. The respondent claims that the foregoing plan in which Miss Smith was used as a dummy was adopted to conserve the income of these beneficiaries and provide funds with which to continue payments to them for their support, the theory being that if the estate had mortgages instead of the property the trustee could use the interest received from the mortgages for distribution among the beneficiaries, and that the holder of the title to the fee could collect the rents, make repairs and endeavor to so manage the property that within a reasonable time it could be taken over by the estate and paid for out of the *corpus*.

The respondent as testamentary trustee has made good in the money transactions, and his accounts have been judicially settled, not, however, until charges against him were preferred and prosecuted. The referee states: " I am of the opinion that the proof does not justify a conclusion that the respondent profited pecuniarily by the transaction or that personal profit was the inducement that moved him to undertake it." He continues: " The evidence shows that the property after the sale in foreclosure was carried for some time in the name of Marian E. Smith. There is no record or written evidence extant to indicate what equitable interests might exist, no declaration of trust, no book entries kept by the respondent, or by the depositary he used, from which a trust could be inferred. Had the respondent died with

this state of facts prevailing, the *cestuis* would have been without protection and their interests seriously jeopardized, if not sacrificed." And he concludes that the respondent's irregular methods, failure to keep accounts as trustee and particularly the mingling of the trust funds with his own by depositing them to his personal account in bank call for emphatic censure, and that in the transactions set forth in specifications " B " and " C " the respondent was guilty of unprofessional conduct.

As to specifications " D " " E " " F " and " G," relating to the handling by the respondent of properties 711, 717 and 721 Henry street, Brooklyn, the learned referee reports that " the proof shows that these properties were bid in by the respondent in the latter part of 1909 in actions to foreclose second mortgages held by him as trustee. Instead of taking title in his own name he again had the property conveyed to his stenographer, Miss Smith, as dummy, and until December, 1911, he personally collected and retained all the income therefrom. In December, 1911, he caused these properties to be transferred to himself as trustee and paid out of the funds of the estate in purported payment of the purchase price, $7,500, which he claimed to be the excess personal expenditures incurred by him in handling the property over and above the income therefrom. * * * With the taking of title, Miss Smith, who, according to the respondent's contention, was acting as a dummy of the trustee, executed deeds of the three houses in blank, which were delivered to and retained by the respondent. New second mortgages were executed by Miss Smith in substantially the same manner and for the same reasons as were set forth in specifications ' B ' and ' C.' During the period that these three houses, 711, 717 and 721 Henry Street, were thus held in the name of Miss Smith, the respondent received and deposited in his account all the rents of the houses. In the methods of the respondent there seems to be an absence of segregation of personal and trust property. Moreover, there is no evidence that on any occasion did Miss Smith execute any declaration of trust. Every reason urged by the respondent for having title taken in the name of Miss Smith would apply equally to the taking of title in his own name as trustee. If it should

First Department, July, 1918.                    [Vol. 184.

be held that the transactions set forth in the specifications now under consideration were in good faith believed to be the wisest and best in the circumstances for the conduct of the trust the respondent assumed, nevertheless I cannot give them the stamp of good professional conduct and allow them to stand uncondemned as an example to the members of the Bar.

"In these transactions the respondent must be held to be guilty of misconduct as an attorney at law."

As to specification "H," one Mary Perkins was the owner of premises No. 692 Henry street, Brooklyn, upon which premises the respondent as trustee held a second mortgage for $1,500. Some time prior to the period of the respondent's accounting, he personally loaned to the said Mary Perkins the sum of $750 and took as security therefor a third mortgage on the said premises. On May 16, 1907, the respondent, acting individually, assigned the said third mortgage to Absalom P. Bachman, who was his office associate, and on the same day the respondent, as trustee, purchased the said third mortgage from Bachman as an investment of the trust estate, paying therefor the sum of $750 out of the funds of the trust estate. The respondent, as trustee, therefore, practically purchased from himself individually a third mortgage. The learned referee states: "It clearly appears that the effect of the transaction was a deal carried through by him acting as trustee with himself acting individually, thereby violating the well-settled rule of conduct for the government of trustees, and that in this transaction he must be found guilty of misconduct as an attorney at law."

Specification "N." In 1907 the respondent personally became the owner of a third mortgage, made by one Mary L. Perkins upon premises 694 Henry street, Brooklyn, for $750; that said premises were already incumbered by a first mortgage and by a second mortgage for $1,500 held by the respondent as trustee; that in May, 1907, the respondent individually assigned the said third mortgage to A. P. Bachman, and on the same day purchased the third mortgage from Bachman for the sum of $750, paying such sum with the funds of the estate, and that Bachman kept no part of the money but immediately paid it over to the respondent. The respondent seeks to justify the transaction upon the ground that

its purpose was to afford the estate a six per cent investment. The transaction resulted in no loss to the estate. The referee concludes that the situation is parallel to the one set forth in specification " H " and calls for a similar decision, namely, a finding of misconduct.

A supplementary charge, also made after the Surrogate's Court in New York county had surcharged respondent upon an accounting, set forth that in March, 1912, one Rosenstein applied to the respondent, who was trustee of the estate of Luther Baldwin, deceased, for a loan of $17,000 on property situated in Brooklyn worth about $21,000, and that as a consideration for the loan it was agreed that Rosenstein should pay the respondent $1,700, and that upon the receipt by the respondent of the bond and mortgage therefor the said Rosenstein paid respondent the said sum of $1,700 for which he did not account to the estate; that upon the property covered by this mortgage it was the intention of Rosenstein to build five houses, and the respondent agreed to release all of the property as the buildings progressed, except two houses which Rosenstein proposed to build on one corner thereof; that this plan was made so that Rosenstein could obtain three loans of $5,500 each on the other three houses, and that the respondent was to negotiate these other three loans and was to receive a commission of ten per cent for so doing; that portions of the property were released by the respondent according to the arrangement or plan that had been entered upon, and that the respondent received for obtaining the three loans for Rosenstein a commission amounting to $1,650; that the respondent as trustee of the Baldwin estate commenced a proceeding against Rosenstein to foreclose the $17,000 mortgage, and upon a sale under the decree the respondent purchased the property as trustee for said estate for the sum of $16,000, he being the only bidder.

The respondent contends that the $1,700 payment covered services other than those connected with this particular loan. The referee states: " He has not produced any book of account showing any charges against Rosenstein, nor copies of any bills. He did introduce testimony showing that he did appear for Rosenstein in an action against one Thorpe. When asked what portion of the $1,700 item was applicable

First Department, July, 1918. [Vol. 184.

in payment of services rendered in connection with that action he stated that he had never fixed it, nor had he ever undertaken to. The testimony shows the property upon which this loan of $17,000 was placed was an unimproved parcel of real estate worth between $20,000 and $21,000. It further appears that the sole beneficiary of the trust was Mary R. Baldwin, an unmarried lady who lived in New Rochelle, the residence of the respondent, and an attendant at the same church; that they had been acquainted for twenty-five or thirty years and that their relations were friendly. Notwithstanding this close personal relationship the respondent admits that he never told Miss Baldwin about the loan in question or his arrangement to execute the release of a portion of the property covered by the mortgage; that he had proceeded entirely without her knowledge, consent, sanction or authorization."

He further finds that the respondent was influenced in making this loan by the personal payments promised him and that he did not exercise that care and prudence required of him for a faithful discharge of his duties as trustee, and that the respondent's acts, as conceded by him and as established by the testimony require a finding that in carrying through the transaction he was guilty of misconduct as an attorney at law.

The conduct of the respondent in the several matters set forth and found by the learned official referee to be professional misconduct demonstrates that the respondent was regardless both of the obligations resting upon an attorney and upon a trustee. He dealt personally with his trust estate. He mingled the trust moneys with his own. He made a personal profit by receiving an unwarranted commission or bonus of ten per cent for a loan of trust money upon inadequate security without the knowledge of his client. The evidence before the official referee is characterized by him as follows: "It must be said that the testimony of the respondent in this proceeding bearing upon these particular specifications is lacking in clearness, contradictory in many important particulars involved in the performance of the trust he assumed, and falls far short of a reasonable and satisfactory explanation of the acts on his part upon which the charges of misconduct are based."

He was not a young and inexperienced practitioner. He had been many years at the bar and was fifty-eight years of age. In the Caulfield estate his conduct was examined by the referee, by the surrogate of Kings county, by the Appellate Division and the Court of Appeals and he was removed from office as trustee and his accounts surcharged. In the Baldwin estate his conduct was reviewed by the referee and by the surrogate, his account was surcharged and the commission or bonus of $1,700 hereinbefore alluded to was specifically condemned and he resigned his trusteeship. The evidence in regard to some of the matters which he gave upon the different hearings contained many irreconcilable contradictions and inconsistencies. While by reason of the surcharges it does not appear that the estates of which he was trustee ultimately suffered financial loss, that is not determinative of this proceeding, which is an inquiry into his professional conduct. The record requires the conclusion that in the matters pointed out by the learned official referee the respondent was guilty of misconduct as an attorney at law, which cannot be overlooked by this court.

We are of the opinion that he should be suspended from practice for a term of three years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

LAUGHLIN, DOWLING, SMITH and PAGE, JJ., concurred.

Respondent suspended from practice for a term of three years. Order to be settled on notice.