Harry G. Herman, S.
In this accounting proceeding by the successor executor, objections have been filed by the special guardian who had theretofore been appointed as committee of the person and property of the executor and sole beneficiary of the residuary estate.
The report of the special guardian questions the necessity of the issuance of letters to a successor executor, it being contended that the principal asset of the estate consisting of a residence could have been sold by the committee of the incompetent rather than by the successor executor pursuant to a power of sale conferred by the will.
The objections also criticize the conduct of the attorney for the successor executor in connection with a satisfaction of a judgment obtained against the incompetent, a brokerage commission paid to the attorney for the successor executor and challenge the reasonableness of the amounts paid or requested for legal services by the attorney for the successor executor.
Decedent died on September 8,1960, survived by an unmarried daughter, Mabel, who had been a patient in a mental hospital for more than 17 years prior to the death of decedent, having been released at his request in September of 1958. By his will dated January 23,1959, the decedent devised and bequeathed his entire estate to his daughter, appointed her as executrix and nominated a nephew as alternate executor.
The estate, the value of which is estimated at approximately $17,500, consisted of the residence in Yonkers, a mortgage and a bank account. The instant accounting by the successor executor covers the period from September 6,1961, the date of issuance of letters to the successor executor, to December 15, 1961.
Decedent’s daughter was committed to the Harlem Valley State Hospital on May 5, 1961, where she has remained ever since. The residence, which was the most valuable asset of the estate and which was eventually sold for $16,000 under circumstances hereinafter described, was occupied by decedent’s daughter from the time of his death in 1960 until her commitment as an incompetent in May, 1961. The attorney for the successor executor had also been the attorney for the daughter as the former executrix until his discharge in April of 1961. On May 11,1961, the attorney who had represented the daughter of decedent as executrix wrote to the office of the Attorney- *808 General advising of the commitment of his client and requested that he be notified of any application for the appointment of a committee. On May 25 a letter was written by such attorney to the Department of Mental Hygiene stating that he had represented the decedent for many years prior to his death and was familiar with the property of the incompetent daughter, that judgments were being taken against her and that there were various bills owed by her, including an obligation to him for legal services.
Presumably, by reason of vandalism which occurred in the unoccupied residence after the commitment of decedent’s daughter, an application was made by such attorney to revoke her letters without notice to her and for the issuance of letters testamentary to the alternate executor named in the will. On August 25, 1961, this court revoked the letters issued to decedent’s daughter by reason of her incompetency and directed the issuance of letters testamentary to the alternate executor. The adjudication of incompetency was made by an order of the Supreme Court of Westchester County on October 20, 1961, on the petition of the Director of the Harlem Valley State Hospital, and a committee was appointed who was subsequently designated by this court as special guardian on January 9,1962.
One of the objections relates to the payment of a default judgment on a claim for plumbing work at the residence obtained against the daughter of decedent personally. In December of 1960 at a time when she was acting as executrix the daughter of decedent had issued an estate check in payment of such claim but the check was returned because of insufficient funds. The judgment with costs amounted to $563.25. Having been unsuccessful in enforcing payment of said judgment the attorney for the judgment creditor accepted the sum of $450 in settlement of said judgment. This amount was paid from the individual funds of the attorney for the successor executor who received in return an assignment in blank of the judgment. Thereafter, in December of 1961, the attorney for such executor received payment of said judgment by a check of the successor executor in the sum of $586.63 made payable to the attorney for the judgment creditor, despite the assignment of the judgment, who thereupon cashed the check made payable to his order and delivered the full proceeds thereof to the attorney for the successor executor. The attorney for the successor executor retained these proceeds and therefore profited by this transaction to the extent of $136.63.
This conduct is sought to be justified by the attorney for such executrix alleging that the successor executor had no knowledge *809 of the transaction; that the purchase of the judgment by such attorney “ was an investment made purely for his own personal advancement.” Dancy v. Aldhous (279 App. Div. 1066) which he cites as an authority to justify this conduct is clearly distinguishable and is wholly inapplicable to this kind of dealing. There was here, to put it mildly, an obvious breach of duty and of divided loyalty. “[T]he financial equation established with the client is to be judged by standards stricter than the morals of the market place ”. (Lehman v. Cameron, 207 Misc. 919, 930; see, also, Matter of Ball, 184 App. Div. 18.) Moreover, canon 10 of the Canons of Professional Ethics prohibits an attorney from purchasing any interest in the subject matter of the litigation which he is conducting and canon 11 prohibits an attorney from taking any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.
Clearly this objection must be sustained and the executor surcharged in the amount of $136.63, with interest at the rate of 6% from the date of payment of this amount from the estate in December of 1961.
In connection with the objection relating to the payment of a brokerage commission to such attorney, it appears that the contract for the sale of the residence which named such attorney as the broker who procured the sale was dated August 31,1961, provided for a sales price of $16,000 and fixed September 29,1961, as the closing date. The attorney charged a brokerage commission of $800 which was paid by the successor executor at the rate of 5% of the sales price of $16,000, and in addition a fee of $160 was also paid for preparing the contract and the deed and attending at the closing. He theretofore acted as a real estate broker anxious to earn $800 for this brokerage and at the same time was there to protect the interests of his client, at a fee of $160, as an attorney; an obvious conflict of duty.
The payment of the brokerage commission is sought to be justified on the ground that his obligation as attorney for the successor executor was not in conflict with his activities as a broker. Matter of Curran (203 Misc. 956) cited as authority for the payment of a brokerage commission under such circumstances is clearly distinguishable. Such attorney had previously represented the executrix and at the time of the sale was attorney for the successor executor.
In the opinion of the court there was here also a breach of duty and of divided loyalty. The person who would have sustained a loss if brokerage commissions were improperly allowed as a deduction would be the residuary legatee under the will, an *810 incompetent who could neither consent to nor ratify such payment. Where interested parties stand in a fiduciary relationship to the estate added compensation for extra services is subjected to strict judicial scrutiny (Matter of Gerbereux, 148 Misc. 461, 467). In Matter of Jones (8 N Y 2d 24) the court condemned an agreement which in effect limited the search for prospective purchasers by restricting the bidding to the best offer that the administrator or the attorney for the life tenant could produce. It was held that the administrator and the attorney for the life tenant had placed themselves in a position which conflicted with the duties which they owed the estate and that where an actual conflict of interest exists, no more need be shown to support a denial of compensation, citing Woods v. City Bank Co. (312 U. S. 262, 268) and Matter of Welling (51 App. Div. 355). No dilution of, or encroachment upon, these fiduciary standards of conduct can be countenanced.
Testimony also was adduced on the hearing to the effect that this attorney, who later represented the successor executor, had listed the residence for sale during the Summer of 1961 and that such property had been listed also for sale several months previously by the executrix prior to her commitment. A real estate broker testified that he had received several offers for the purchase of such premises and had submitted an offer of $17,500, but no sale was consummated because the broker was advised by the attorney that the premises could not be sold until a committee had been appointed and the purchaser would not wait until then. There was also evidence of another offer submitted in September of 1961, in the amount of $16,000 which was rejected because it provided for a purchase-money mortgage.
In presuming to act as a broker the attorney representing the fiduciary placed himself in a position of divided loyalty. The financial gain which would have resulted from a sale to a purchaser which he had procured necessarily conflicted with his duty as an attorney to encourage efforts by the executor to seek the best offer obtainable from all available sources. There is no proof that such attorney advised the executor to seek other or better offers and any efforts in that direction would only have served to defeat or delay a sale to the purchaser procured by the attorney at the price agreed upon. The executor therefore will be surcharged in the amount of $800 on the item of brokerage commissions with interest at 4% per year from the date of such payment to the date of repayment.
So much of the objection of the special guardian as relates to the propriety of the sale by the successor executor as distinguished from the sale by the committee is overruled and *811 dismissed. The real estate is disposed of by the residuary clause and the will expressly confers a power of sale upon the successor executor as well as upon the executrix. The devise to the incompetent daughter of the decedent was therefore a residuary devise rather than a specific devise and having been made to a person under a disability, title to the residence vested in the residuary legatee, subject to the exercise of the power of sale. Clearly a sale was advisable whether made by the committee or by the successor executor and it cannot be said therefore that a sale by the committee upon application to the court was preferable to proceeding pursuant to a power of sale conferred by the will.
The remaining objections of the special guardian-committee relate to the amounts paid or requested as legal fees for services rendered by this attorney to the successor executor. Schedule “ C ” of the accounting discloses that $394.45 is requested as a fee and disbursements for the revocation of letters testamentary to the daughter and the issuance of letters to the successor executor. A fee of $200 plus disbursements is allowed and the excess is to be surcharged to the successor executor with interest at 6% from September 5, 1961, the date of payment. The fee of $160 for the title closing is allowed but the brokerage fee of $800 is disallowed as discussed above. Similarly the amount paid for the plumbing judgment is disallowed to the extent of $136.63, with interest thereon from December 4, 1961. The fee of $300 plus disbursements for the instant accounting will be allowed to include all services rendered and to be rendered to and including the settlement of the decree.
The attorney has also received $1,150 as a fee in the probate of the will and representing the original executrix, but no accounting has been filed for that period. The committee-special guardian will be directed to proceed and file such an accounting on behalf of his incompetent and the court will consider the propriety of this $1,150 fee at that time.