Samuel M. Gold, J.
This motion to dismiss the complaint is based upon (1) plaintiff’s alleged lack of capacity to sue, (2) the claimed insufficiency of the complaint, and (3) the Statute of Limitations.
On an appeal from an order to set aside service of the summons and complaint for lack of jurisdiction of the person of the defendant and of the subject matter of the action, the Appellate Division (2 A D 2d 596) held that there was jurisdiction because “ Implicit throughout the various allegations *844 of the complaint is a cause of action for breach of contract ” (p. 597). The court concluded its opinion by saying: “ Therefore, construing the complaint as stating a cause of action in contract with jurisdiction in this court over the subject matter, we think that subdivision 3 of section 200 of the Banking Law merely provides an additional and not an exclusive method of service” (p. 598).
The complaint alleges that the Prime Minister of Hungary, prior to the establishment of the Hungarian People’s Republic, had certain funds at his disposal, which, under the Hungarian Law, he was empowered to use ‘ ‘ for such purposes and in such a manner as he desired in the sole exercise of his discretion that the Prime Minister used $460,000 of said money to create a fund for the maintenance of the then Government of Hungary, should it be exiled from the country; that he turned said $460,000 over to three (3) persons “ as individuals to manage and administer said fund in accordance with the terms and purposes thereof”; that said three persons, “through their representative, Prank Gordon, did deposit the balance of the principal of the said trust fund with the defendant Credit Suisse in Switzerland ” and that said defendant wrongfully paid over the deposited funds to the present Hungarian Government, known as the Hungarian People’s Republic, which supplanted the Government which had been in power at the time the Prime Minister created the fund for the use of his Government in the event of its being exiled.
On a motion to dismiss the complaint as insufficient, its allegations must be deemed true. It must, therefore, be assumed that the creation by the Prime Minister of a fund for the benefit of members of the then existing Government, in the event of their exile, was in fact authorized by the Hungarian Law, as alleged in the complaint. In that assumption, the defendant, which had received the funds for safekeeping from its managers, acting through Gordon, had no right to turn it over to the successor Government of Hungary instead of to the managers of the fund. A good cause of action for breach of contract is alleged in favor of plaintiff, suing in a representative capacity on behalf of himself and other members of the exiled Government, they being the beneficiaries of the fund. , It is true that Varga lacks capacity to sue, “ as President of the National Hungarian Government ” in view of the fact that our Government does not recognize that Government, but, on the contrary, recognizes the Hungarian People’s Republic. Varga, may, however, maintain this action in his individual capacity on *845 behalf of himself and the others for whose benefit the fund was created and who suffered damage as the result of defendant’s payment of the fund to the present Hungarian Government.
Defendant urges that neither plaintiff nor any of the other alleged beneficiaries of the fund were parties to the contract between the defendant and the managers of the fund (acting through Gordon as their agent). The beneficiaries of the fund may, nevertheless sue for the alleged breach by defendant of its contract with the managers of the fund. Section 210 of the Civil Practice Act, which authorizes a trustee of an express trust to maintain an action, is permissive only. The right of the beneficiaries of an express trust to sue is unaffected by that section (Lewis v. Home Ins. Co., 199 App. Div. 556, affd. 234 N. Y. 498). In that case the court held that the provisions of section 449 of the Code of Civil Procedure, the predecessor of section 210 of the Civil Practice Act, did not prevent the beneficiaries of an express trust from maintaining an action on an insurance policy issued to the trustee. The court said (p. 561) that though it has been held that warehousemen procuring insurance become trustees of an express trust and might sue under the provisions of section 449 of the Code of Civil Procedure the courts do not hold that the beneficiaries cannot sue. The court declared that the right of the beneficiaries themselves to sue had apparently always been assumed and that the provisions of section 449 “ simply authorize the trustee of an express trust to bring suit without making the beneficiary of the trust a party. (Hubbell v. Medbury, 53 N. Y. 98) ”. A suit by the plaintiff, Varga, on behalf of himself and the other beneficiaries for the defendant’s alleged breach of its contract with the managers of the fund, does not lose its character as a breach of contract action and become an action for breach of trust merely because the plaintiffs are the beneficiaries of the trust rather than the trustees thereof. The fact that the Appellate Division held that jurisdiction of our courts over the defendant would not extend to an action for breach of trust is, therefore, immaterial. The action remains one for breach of contract despite the fact that the plaintiffs are the beneficiaries of parties to the contract.
That part of the motion which is based upon the Statute of Limitations is denied. It does not appear that the beneficiaries of the fund or its managers knew of defendant’s payment of the fund to the present Government at least six years prior to the commencement of this action. Notice to Gordon was not notice to the managers or beneficiaries of the fund, especially *846 since it does not appear that Gordon, at the time of the notice to him, was still representing the managers of the fund or its beneficiaries.
Motion denied, with leave to answer within 10 days from the service of a copy of this order with notice of entry. Defendant may plead the Statute of Limitations as an affirmative defense, to protect its rights in the event that it should be able to prove at the trial that the managers or beneficiaries of the fund knew more than six years prior to the commencement of the action that it had been paid to the Hungarian People’s Republic.