Mary Louise IRIART, Catherine Julia Iriart, and Christina Iriart, Minors, by Marian O. Iriart, their Mother and Next Friend, Plaintiffs-Appellants and Cross-Appellees,

v.

Robert J. JOHNSON, Defendant-Appellee and Cross-Appellant.

Jean E. Johnson, James T. Pierce, and Jane Pierce, Defendants-Appellees.

No. 7547.

Supreme Court of New Mexico.

Dec. 6, 1965.

Rehearing Denied Feb. 24, 1966.

Milton S. Seligman, Leland B. Franks, Sutin & Jones, Albuquerque, for appellants and cross-appellees.

Hines & Mistretta, Albuquerque, for defendants-appellees.

NOBLE, Justice.

The minor beneficiaries of three trust agreements have appealed from a judgment denying recovery against a real estate broker for breach of fiduciary duty.

The facts may be summarized from the findings of the trial court. In 1957, Juan Iriart, owner of the forty acres of land involved, conveyed the land to trustees for his minor daughters. Mr. Iriart had been trying to sell the land for $1500 per acre. After conveyance to the trustees, Iriart continued to deal with the property as his own, including its listing for sale in his name and its assessment for taxes in his name. Defendant Johnson, an Albuquerque realtor, discovered the land from the tax rolls and secured a listing on it from Mr. Iriart for $70,000. Johnson and his employee, Pierce, decided that Pierce would buy it, and through Johnson offered Iriart $60,000, payable $5,000 down and the balance in monthly payments without interest. The Iriarts accepted the offer. The existence of the trust was not disclosed to Johnson. During the course of the proceedings, Johnson advised Mrs. Iriart, who in turn told her husband, that he was the actual purchaser and that Pierce was only a "straw man" in order "to make the papers legal."

A subsequent title examination revealed the deed to the trustees, and Johnson thereupon requested their approval of the binder agreement which was given after their consultation with the Iriarts. The transaction was closed and some nine months later Johnson sold the land for $160,000. The Iriarts' trustees took a passive attitude at all times

(actually took no active part in the management of the land). This action against Johnson was brought by Mrs. Iriart, as next friend of the minor beneficiaries, demanding rescission of the deed from the trustees to Johnson, or, in the alternative, for the profit made by Johnson.

■ A broker is a fiduciary, holding a position of great trust and confidence, and is required to exercise the utmost good faith toward his principal throughout the entire transaction. Thus, one employed as a real estate broker to purchase property for another is prohibited from purchasing it for himself, Mitchell v. Allison, 51 N.M. 315, 183 P.2d 847; and a broker can neither buy for himself nor sell to a partner without disclosing the facts to his principal and securing his approval thereto. Mitchell v. Allison, 54 N.M. 56, 60, 213 P.2d 231. See, also, Foster v. Zapf, 35 N.M. 319, 296 P. 800; Canfield v. With, 35 N.M. 420, 299 P. 351. In addition to the duty to disclose his interest as a purchaser, a real estate broker is under a legal obligation to make a full, fair and prompt disclosure to his employer of all facts within his knowledge which are or may be material, or which might affect his principal's rights and interest or influence his action relative to the disposition of the property. Foster v. Zapf, supra; Canfield v. With, supra; Restatement of the Law, Agency 2d, § 381. The following comment from Restatement of the Law, Agency 2d, § 390, is pertinent:

"* * * A fact is relevant if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms. *Hence, the disclosure must include not only the fact that the agent is acting on his own account (see § 389), but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. This includes, in the case of sales to him by the principal, not only the price which can be obtained, but also all facts affecting the desirability of sale, such as the likelihood of a higher price being obtained later, the possibilities of dealing with the property in another way, and all other matters which a disinterested and skillful agent advising the principal would think reasonably relevant.*" (Emphasis added.)

We do not reach Johnson's very interesting contention that because the Iriarts, by their continued active management of the real estate, including their activity in the sale, with full knowledge and consent of the trustees, acted as agents of the trustees and, consequently, their knowledge that Johnson was the actual purchaser was the knowledge of the trustees. This is so because the trial court found that in addition to the question of whether the trustees knew

that Johnson was the real purchaser, other breaches of his fiduciary relationship occurred:

"20. Competent realtors testified that the fair market value of the land in question in January of 1958 was in the neighborhood of $1,500 an acre, or a total of $60,000. While some adjacent land, and land in northeast Albuquerque, where subject land is situate, sold at about the same time and later in 1958 for much greater prices per acre, the market had been slow and was just picking up in early 1958. Likewise, most of the properties offered as having produced greater prices per acre had individual features that could have affected the price, as better street connections, closer utilities, or equivalent advantages. Nevertheless, Johnson failed to disclose to the Trustees or to the Iriarts considerable information that he had concerning the general real estate market in northeast Albuquerque, or what might be considered to be the fair market value of property in that area."

We think the trial court was in error in concluding that notwithstanding the broker's failure to make full disclosure concerning the fact that he was the purchaser in fact and his failure to disclose to his principal facts within his knowledge concerning land values and market prices, such violations of his duty as a broker were of no consequence because the trustees and the beneficiaries received the full market value of the land as of the date of its transfer. Perhaps the trustees would have sold to Pierce even if they had known the facts concerning land values and market prices which Johnson failed to disclose to them, but that is not the controlling consideration. Neglect to communicate to his principal all facts which might influence the principal's action renders the broker liable to his principal. Canfield v. With, supra; Schepers v. Lautenschlager, 173 Neb. 107, 112 N.W.2d 767. Courts do not inquire whether a broker who has violated his fiduciary duty has gained an advantage, or whether his conduct has been fraudulent. When the fact of such violation appears, the transaction is pronounced void as against public policy. Foster v. Zapf, supra; 26 A.L.R.2d 1312–1314.

The record discloses that this real estate was sold to a subdivider so that the property could not be reconveyed. However, the plaintiff is not limited to rescission where that remedy is inadequate, as here, but may recover damages for the broker's wrongful acts. Mitchell v. Allison, 54 N.M. 56, 61, 213 P.2d 231. A constructive trust is imposed not only where a fiduciary wrongfully disposes of the property of his principal but also where the property, although not exchanged for other property, is used in making a profit. In

such case, the person so using the property is accountable for the profit, and if the proceeds can be found he is chargeable as a constructive trustee of the proceeds. This principle is equally applicable to a broker who, in violation of his duty to this principal, himself buys property of the principal and makes a profit. He is accountable for the profit so made. 4 Scott on Trusts, 2d Ed., § 503; Restatement of the Law, Agency 2d, § 404.

We are not persuaded by defendant's argument that this action must fail because, legal title to the property being in the trustees, the beneficiaries cannot maintain an action at law with respect to it against third persons. Rule 17(a) of the Rules of Civil Procedure (§ 21–1–1(17) (a), N.M.S.A.1953) requires every action to be prosecuted in the name of the real party in interest and continues:

> "* * *; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; * * *."

The enumeration is in the form of a "but" clause, and while an inference may be drawn that the right to maintain an action is limited to those enumerated, unless such fiduciary is derelict in his duty, the courts have nevertheless generally adopted the construction that such enumeration does not qualify but merely supplements the statement that the action shall be brought in the name of the real party in interest and thus also makes those enumerated real parties in interest within the meaning of the rule. 3 Moore's Federal Practice (2d Ed.) pp. 1365–66. Statutes having similar provisions have been construed to permit a suit on a contract made for the benefit of another to be brought by either the trustee or the beneficiary. Rogers v. Gosnell, 51 Mo. 466; Snider v. Express Co., 77 Mo. 523; Varga v. Credit Suisse, 6 Misc.2d 843, 162 N.Y.S.2d 80. We see no difference between that situation and the instant case involving an express trust, as to who may bring the action. Particularly is this true where, as here, the trust was, in fact, if not in form, a passive one. See 3 Scott on Trusts, 2d Ed., § 281.1. It follows that the beneficiaries may maintain this suit. See Chouteau v. Boughton, 100 Mo. 406, 13 S.W. 877. In any event, the trustees are parties to this action so that the court has all of the parties with a possible interest before it.

The trial court was wrong as a matter of law in finding that Mrs. Iriart, as mother and next friend of the minor beneficiaries, was guilty of laches because of her delay in bringing this action for a period of eighteen months with knowledge

that Johnson was the real purchaser. This action is not one by Mrs. Iriart, but actually by the trustees and the minor beneficiaries who, because of infancy, must institute an action by their guardian or next friend, § 21–1–1(17) (c), N.M.S.A.1953. The defense of laches is predicated upon the doctrine of estoppel, Sharpe v. Smith, 68 N.M. 253, 360 P.2d 917, and a beneficiary of a trust who is under a legal incapacity such as infancy is not barred by laches from holding a trustee liable for a breach of trust so long as the incapacity continues. 2 Scott on Trusts, 2d Ed., § 219.3. We perceive no reason why a different rule should apply in an action against third parties. Furthermore, lapse of time alone does not necessarily imply an unreasonable delay in bringing suit, but it must also appear that the delay has worked to the injury of another. Morris v. Ross, 58 N.M. 379, 271 P.2d 823. No finding of such injury was made in this case. In addition, it is not claimed that the trustees had prior knowledge of Mr. Johnson's real position in the transaction so that laches could not in any event apply to them.

A commission paid to the broker employed to sell real estate is treated as a profit and may be recovered back by the principal. 4 Scott on Trusts, 2d Ed., § 502.

It follows that the case must be reversed with instructions to vacate the judgment and to proceed in a manner not inconsistent with this opinion.

It is so ordered.

MOISE and COMPTON, JJ., concur.