607 P.2d 1167
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Joe STETTHEIMER,
Defendant-Appellant.**

**No. 4153.**

Court of Appeals of New Mexico.

Jan. 31, 1980.

Lynn Pickard, Pickard & Singleton, Santa Fe, Dan Buzzard, Clovis, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Walter G. Lombardi, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendant appeals his conviction of fraud over $2,500 and attempted fraud over $2,500 contrary to §§ 30–16–6 and 30–28–1, N.M.S.A.1978, respectively. He asserts four grounds for reversal: (1) insufficient evidence as to fraud; (2) insufficient evidence as to attempted fraud; (3) failure of the trial court to give an appropriate requested jury instruction; and (4) that the trial court allowed improper impeachment of the defendant. We affirm.

*Facts regarding fraud.*

Defendant, a real estate agent, entered into a contract with a Ms. Melear which authorized the defendant to sell her house. A Mr. Mendez expressed interest in trading his apartments for Ms. Melear's house and defendant informed him that Ms. Melear would sell the house for $14,000. Defendant and Mr. Mendez closed that deal for $14,000 on December 10, 1977. On or about December 11, 1977, defendant telephoned Ms. Melear and offered to buy the house from her for $10,200. The substance of this conversation was contained in a letter from defendant to Ms. Melear dated December 12, 1977. In the letter and in the telephone conversation, defendant indicated that someone had expressed interest in her property but had all his cash tied up in apartments. At no time did the defendant inform Ms. Melear that Mr. Mendez had

signed a contract offering $14,000 for her house. The property had been appraised at $11,400 and was listed for sale at that amount.

*Facts regarding attempted fraud.*

Defendant attempted to finance his purchase of property owned by Mr. and Mrs. Joiner. Defendant and the Joiners signed two contracts for the sale of property. One listed $16,000 as the purchase price and the other listed it as $20,300. Mr. Joiner testified that the contract with the lower sale price was their actual agreement and that the defendant told him that the other contract was merely a "presentation copy" and said it was for the loan. Mr. Joiner only received a copy of the $16,000 contract. When defendant applied for financing, he only presented the bank with the higher offer. The bank appraisal was $20,300. The bank's loan policy on the type of property in question was to give 80% financing on the lower of the appraisal value or the sale price. Defendant was to receive a loan commitment for $16,240. This was greater than the actual sale price. The loan, however, was never completed due to title problems.

## INSUFFICIENT EVIDENCE—FRAUD

Defendant contends that the State failed to establish all the requisite elements of the crime of fraud. Jury Instruction No. 3 reads:

> For you to find the defendant guilty of fraud as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant, by any words or conduct, misrepresented a fact to Robbie Melear, intending to deceive or cheat Robbie Melear;
>
> 2. Because of the misrepresentation and Robbie Melear's reliance on it, defendant obtained the *sum of $2,960.00*;
>
> 3. This *sum of money* belonged to someone other than the Defendant; and
>
> 4. This happened in New Mexico on or about the 12th day of December, 1977.
> (Emphasis added.)

Defendant correctly argues that this instruction becomes the law of the case with regard to the elements of the crime of fraud. *State v. Martin*, 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977), held that "[s]ince these instructions were not objected to and were requested by the state they become the law of the case". *See also, State v. Gutierrez*, 75 N.M. 580, 408 P.2d 503 (1965); *State v. Rayos*, 77 N.M. 204, 420 P.2d 314 (1967).

Defendant asserts there is no evidence that he ever received any sum of money and that all he received from his alleged fraud was the house he purchased from Ms. Melear. Defendant further cites the fact that N.M.U.J.I. Crim. 16.30, N.M.S.A.1978, has a separate provision for fraud involving money and for fraud involving the misappropriation of property and that the submitted instruction was the version relating to money.

Defendant's view is unnecessarily restrictive. Defendant himself explains how the $2,960 figure was reached:

> [I]t is of interest to note that the $2,960 figure was arrived at by subtracting the actual sale price of Ms. Melear's house ($10,200) from the potential sale price ($14,000), and by further subtracting from the result thereof ($3,800) a 6% commission on $14,000 ($840).

Accordingly, the issue becomes one of how much precision is required in an instruction.

■ It has long been the law in New Mexico that an instruction need not be drafted with scientific exactness, but it must merely apprise the jury of the substance of the matter covered as fully and intelligently as if it were properly worded. *State v. Carabajal*, 26 N.M. 384, 193 P. 406 (1920). *Carabajal* held that even if the instruction is not directly applicable to the facts of the case, there is no reversible error so long as there was no possibility that it caused confusion and contributed to the defendant's conviction.

■ A review of the record explains the factual predicate for the jury finding that defendant had fraudulently misappropriated $2,960. Under *Carabajal, supra*, the al-

leged factual inconsistency of calling the fraudulently acquired increased value money and not property is irrelevant.

■ Defendant also contends that silence, a non-disclosure, is not criminally actionable. The key to resolving this issue is to determine whether "misrepresentation" should be broadly or narrowly construed in the criminal context. Both sides recognize that the alleged omission would be sufficient to form the basis of an action in civil fraud since defendant, as Ms. Melear's real estate broker, had a fiduciary duty "to make a full, fair and prompt disclosure to his employer of all facts within his knowledge which are or may be material". *Iriart v. Johnson*, 75 N.M. 745, 411 P.2d 226 (1965).

It is over the application of this rule to the criminal sphere that presents a question of first impression in New Mexico and has led to a split of authority in other jurisdictions.

Defendant cites the court to three cases which hold that a non-disclosure is not a misrepresentation and, therefore, cannot be the basis of a criminal conviction sounding in either fraud or taking by false pretenses. *People v. Baker*, 96 N.Y. 340 (1884); *Rogers v. People*, 161 Colo. 317, 422 P.2d 377 (1966); and *McCorkle v. State*, 170 Ark. 105, 278 S.W. 965 (1926). *Baker* and *Rogers* rely on the general rule that omission may not be the basis of imposition of criminal sanctions, while *McCorkle* relies on an earlier Arkansas case, *Maxey v. State*, 85 Ark. 499, 108 S.W. 1135 (1908), which held that the act of presenting a bad check was not tantamount to making a misrepresentation, even though defendant knew the check was bad because there was no verbal communication.

*McCorkle* is, therefore, of no aid to defendant as its holding rests on a case completely inapposite to well-established New Mexico law. In *State v. Kelly*, 27 N.M. 412, 202 P. 524 (1921), the Supreme Court held that the presentment of bogus bonds was a sufficient misrepresentation upon which to find criminal fraud and that a misrepresentation may be established by either conduct or acts.

The modern trend is away from the approach cited by the defendant. Most recent cases, dealing with whether silence may form the basis for a criminal misrepresentation, have held it may where the defendant has a legal duty to speak or where such silence is calculated to deceive. For example, *see People v. Etzler*, 292 Mich. 489, 290 N.W. 879 (1940); *Neece v. State*, 210 So.2d 657 (Miss.1968); *People v. Randono*, 32 Cal. App.3d 164, 108 Cal.Rptr. 326 (1973); *Bright v. Sheriff, Washoe County*, 90 Nev. 168, 521 P.2d 371 (1974); *State v. West*, 252 N.W.2d 457 (Iowa 1977). *See also* Perkins, *Criminal Law* (1957), pp. 264–65.

Additionally, the criminal fraud statute (§ 30–16–6, N.M.S.A.1978) itself appears to adopt the modern approach by its broad definition of the requisite criminal conduct: "[f]raud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations".

Defendant next contends that all affirmative representations made by defendant to Ms. Melear were merely statements of opinion and not misstatements of known fact. Since the State relies on defendant's silence coupled with his fiduciary duty to establish the required misrepresentation, this issue is without merit.

■ Defendant claims that even if there was a misrepresentation it was neither material nor relied upon by Ms. Melear, since Ms. Melear only wanted cash and had no desire to trade her property. Taking the facts in the light most favorable to the verdict, there is substantial evidence that the misrepresentation was both material and relied upon by the victim, Ms. Melear. *State v. Schifani*, 92 N.M. 127, 584 P.2d 174 (Ct.App.1978).

## INSUFFICIENT EVIDENCE—ATTEMPTED FRAUD

Defendant alleges three bases of insufficient evidence. In actuality, defendant raises three legal issues, rather than factual questions. Defendant first claims that ac-

quiring borrowed money is not enough to invoke the criminal fraud statute, § 30–16–6, but that one must acquire complete title and dominion. Defendant next argues that the value of alleged attempted fraud is the value of a loan of $3,440 (the difference between $16,240 [80% of $20,300] and $12,-800 [80% of $16,000]). Defendant lastly contends that his actions constituted mere preparation and that there was no overt act in furtherance of the alleged intended criminal act.

In support of defendant's first contention, he cites to *Schifani, supra.* This court distinguished between money acquired as a loan as opposed to money acquired for a specific investment, indicating that there would only be fraud in the latter case. The sole reason for this distinction and terminology in *Schifani* was to determine whether the defendant had misrepresented his intended use of the finances, not whether a loan may be the subject of a fraudulent taking. The manner in which Schifani acquired the money, "loan" or "investment", is irrelevant to this proceeding for it is undisputed that Schifani was required to return the money plus interest, as he issued promissory notes to that effect. Schifani's borrowing of the money was a sufficient "misappropriation or taking of anything of value". § 30–16–6.

The rationale underlying this approach, that the crime is in forcing the creditor to assume a greater risk, is explained by Perkins, *supra*, at 266:

> The crime of false pretenses may be committed by one who intentionally makes false representations about the security he offers even without such an extreme factual situation. If by reason of the false representation of the debtor, the creditor has assumed a substantially greater risk than would have been his if the debtor's statements had been true, this requirement of the crime is satisfied even if the security is not entirely worthless, or even if it may turn out to be adequate.

Defendant further attempts to support his proposition by citing to § 30–16–39,

N.M.S.A.1978 (Supp.1979), claiming that this closes the hole left in § 30–16–6 for property over which the title is not acquired. This argument is without merit. Section 30–16–39 only covers one who "*rents* or *leases* a vehicle or other personal property". (Emphasis added.) This type of arrangement requires the return of the exact same property, unlike the loan of money which only requires like repayment.

The fraudulent obtainment of a loan may be the basis for a conviction of criminal fraud. *Cf. State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App.1978); *Schifani, supra.* Further, the rule rests on sound policy. *See* Perkins, *supra*, at 266. Defendant's claim under this argument is without merit.

Defendant next contends that what was misappropriated was a loan for the additional sum of $3,440 and, since there is no valuation for a loan of this sum, there is no evidence that it was worth more than $2,500. And, if there was no such evidence, then there would be no evidence that the attempted crime was a felony. § 30–16–6. Thus, since "[n]o person shall be sentenced for an attempt to commit a misdemeanor", § 30–28–1, there is a failure of proof.

Defendant's argument is a clever game of semantics. What is required is that the property fraudulently acquired is worth more than $2,500—the means of acquisition is irrelevant. The defendant sought to fraudulently acquire an additional $3,440, whether it would be acquired through a loan, investment or other means is irrelevant so long as its acquisition was the result of "fraudulent conduct, practices or representations". § 30–16–6.

Defendant's final contention is that there is insufficient evidence that defendant's actions went beyond mere preparation and rose to the level of an attempt.

The law of criminal attempt in New Mexico is controlled by *State v. Trejo*, 83 N.M. 511, 494 P.2d 173 (Ct.App.1972) and *State v. Lopez*, 81 N.M. 107, 464 P.2d 23 (Ct.App. 1969). *Trejo* held that even "slight acts in furtherance of that intent [to commit the

felony] will constitute an attempt". *Lopez* quoted extensively from *State v. Bereman*, 177 Kan. 141, 276 P.2d 364 (1954), to explain the distinction between mere preparation and an attempt:

> "In order that there may be an attempt to commit a crime, whether statutory or at common law, there must be some overt act in part execution of the intent to commit the crime. The act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory, and it need not be the last proximate act to the consummation of the offense attempted to be perpetrated. However, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparation or solicitation is made. *Slight acts done in furtherance of that design will constitute an attempt.* No definite rule can be laid down by which an act might be characterized as overt in any particular case. The general principle of law concerning attempts must be applied in each case as nearly as it can with a view to substantial justice." (Emphasis added.)

To present an offer to the bank, which constituted an element of the attempted crime (fraudulent misrepresentation), and then accept a loan commitment based on the fraudulent document is a "subsequent step in a direct movement toward the commission of the offense".

Defendant's other arguments under this point are also without merit.

### INSTRUCTION ON ATTEMPT

■ Defendant contends that the court's failure to present the jury with defendant's requested Instruction Nos. 1 and 3 and the giving instead of Instruction No. 4 amounted to reversible error. Defendant's own admission is that his requested Jury Instruction No. 1 was in error as to part. N.M.R.Crim.P. 41(d), N.M.S.A.1978, requires a correct instruction be tendered, not a partially correct instruction.

■ The main difference between defendant's requested Instruction No. 3 and Jury Instruction No. 4 is that the refused instruction includes the following sentence: "[y]ou are instructed that preparation to commit a crime not followed by an overt act done toward its commission does not constitute an attempt".

*State v. Valenzuela*, 90 N.M. 25, 559 P.2d 402 (1976), holds that where the defendant requests an instruction, even if correct, that is already covered by the trial court's instructions, it is not error to refuse the instruction. In the instant case, the trial court's instruction was N.M.U.J.I, Crim. 28.-10, N.M.S.A.1978, which correctly stated the law to be:

> For you to find the defendant guilty of an attempt to commit fraud as charged in Count II, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant intended to commit the fraud of over $2,500;
>
> 2. The defendant began to do an act which constituted a substantial part of the fraud but failed to commit the fraud;
>
> 3. This happened in New Mexico on or about the 22nd day of June, 1978.

Both tendered instructions were properly rejected.

### CROSS–EXAMINATION OF DEFENDANT

■ Defendant contends that the following question to the defendant on cross-examination constituted reversible error:

Q. What is the appraised value of your home?

A. I would say about $70,000.00 * *.

Defendant claims that the above-quoted question was irrelevant and should have been excluded under N.M.R.Evid. 402, N.M.S.A.1978. That rule provides that all non-relevant evidence is inadmissible. N.M.R. Evid. 401 defines "relevant evidence":

> "Relevant evidence" means evidence having *any tendency* to make the exist-

ence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (Emphasis added.)

The State alleges, as it did at trial, that the evidence of defendant's relatively high standard of living would have a tendency to establish a motive based on his need to maintain his financial status.

In *Wright v. Brem*, 81 N.M. 410, 467 P.2d 736 (Ct.App.1970), a case decided prior to the enactment of the present Rules of Evidence, the court stated:

> Because of the difficulty of precisely defining the term "relevant evidence," or of circumscribing by specific and categorical rules the substance or content of evidence which falls within the area of "relevancy," the determination of relevancy, as well as of materiality, rests largely within the discretion of the trial court. *Glass v. Stratoflex, Inc.*, 76 N.M. 595, 417 P.2d 201 (1966).

This holding is equally valid today. It is just because of this imprecision in delineating the parameters of "relevant evidence" that merits great deference to the decision of the trial court.

We hold defendant's argument to be without merit. The trial court did not abuse its discretion in admitting this evidence.

We have considered defendant's other arguments and find them to be without merit.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and WALTERS, JJ., concur.