STATE V. SANCHEZ

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**KYLE SANCHEZ,**
**Defendant-Appellant.**

Docket No. A-1-CA-35775
COURT OF APPEALS OF NEW MEXICO
May 22, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, David N. Williams, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Jane A. Bernstein, Assistant Attorney General, Albuquerque, NM for Appellee

Bennett J. Baur, Chief Public Defender, Allison H. Jaramillo, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

JACQUELINE R. MEDINA, Judge. WE CONCUR:  J. MILES HANISEE, Judge, KRISTINA BOGARDAS, Judge

**AUTHOR:** JACQUELINE R. MEDINA

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Defendant Kyle Sanchez was convicted of two counts of attempted criminal sexual penetration of a minor (CSPM). He raises three issues on appeal. First, he challenges the sufficiency of the evidence supporting each conviction. Second, he argues the State should have charged him with attempted child solicitation by electronic device, and not CSPM. Third, he argues that his two convictions violate double

jeopardy. We reverse one of Defendant's convictions on double jeopardy grounds, affirm the other, and remand to the district court for resentencing.

**BACKGROUND**

**{2}** Albuquerque Police Department Detective Steven Walsh, posing as "Stu Wall," placed an ad captioned "glory hole party" on Craigslist as part of a sting operation to catch would-be sexual predators, Defendant replied to the ad, "[S]ounds like fun," and asked, "How young are they?" Stu Wall responded, "[Y]es fun is one word that could be used. [J]ust so we don[']t waste each other's time they are very young." Defendant replied, "That's ok with me! Count me in." Stu Wall and Defendant continued communicating by email and eventually changed to cell phone texting.

**{3}** Through these communications, Defendant learned that the children at the "glory hole party" would be eleven and nine years old. Defendant expressed his excitement about the "glory hole party," and asked Stu Wall if it were possible to "play"[1] with the children before the "party" which was scheduled for a month away. The two men arranged for a pre-party meeting between Defendant and "Kim," Stu Wall's fictitious eleven-year-old step-daughter. Stu Wall asked Defendant what he would like to do with Kim. Defendant replied that he intended to engage in cunnilingus and fellatio with Kim, as well as watch Kim engage in activities with Stu Wall.

**{4}** Stu Wall suggested that Defendant bring a CD for Kim as a present to "win her over" and informed Defendant that he had no condoms. Defendant agreed to bring the CD and offered to bring his own condoms. On the evening of the arranged pre-party meeting, Stu Wall notified Defendant that he could head over and provided Defendant with an address at an apartment complex. Defendant told Stu Wall that he had forgotten the CD, and Stu Wall suggested that Defendant instead bring orange Fanta. Defendant spent twenty to twenty-five minutes searching for the soda. Stu Wall eventually provided Defendant with a list of possible purchase locations and Defendant found an open convenience store. After purchasing the orange Fanta, Defendant drove to the apartment complex, parked, and texted Stu Wall that he was "here."

**{5}** Defendant then asked Stu Wall for a show of "good faith" by letting Kim come outside of the apartment so Defendant could see her. Stu Wall denied this request, but offered to stand in the doorway of his apartment with Kim. Not being able to see either Stu Wall or Kim, Defendant put his car into reverse and began to leave.

**{6}** Other officers participating in the sting operation and positioned in the parking lot of the apartment complex stopped and arrested Defendant. Officers found two bottles of orange Fanta in his vehicle, but did not find condoms in the vehicle or on Defendant's person. At the police station, Defendant stated he knew what a "glory hole" was and that he brought the Fantas to make Kim feel comfortable with him and to exchange them for sex with her. Detective Walsh asked Defendant if he went to the apartment complex to

---

1Detective Walsh testified he understood "play" to mean to be sexually active with children.

"either have or get oral sex from an eleven-year-old," Defendant responded, "[Y]es, I'll say yes to that."

**{7}** A jury convicted Defendant of two counts of attempted CSPM, pursuant to NMSA 1978, Section 30-9-11(A), (D)(1) (2009), and NMSA 1978, Section 30-28-1 (1963). The district court entered a conditional discharge and placed Defendant on probation for five years.

## DISCUSSION

### I. Sufficient Evidence Supports Defendant's Convictions for Attempted CSPM

**{8}** Defendant contends the evidence was insufficient to support his convictions for two reasons: first, he claims because an actual child was not involved in the sting operation that it was impossible for him to commit the goal crimes of CSPM, and second, he claims the State failed to prove that he "took a substantial step beyond mere preparation" toward committing the crimes of CSPM. The State argues Defendant's "impossibility" argument is misplaced because Defendant was convicted of the crimes of *attempted* CSPM. The State further argues that the evidence was sufficient to support the jurors finding that he took overt acts in furtherance of the commission of the crimes.

**{9}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).

**{10}** We agree with Defendant that a conviction for criminal sexual penetration of a minor requires evidence that the crime was committed on a child under thirteen years of age. Section 30-9-11(A) ("Criminal sexual penetration is the unlawful and intentional causing of a person to engage in . . . cunnilingus, fellatio . . . whether or not there is any emission."); Section 30-9-11(D)(1) ("Criminal sexual penetration in the first degree consists of all criminal sexual penetration perpetrated . . . on a child under thirteen years of age[.]"). Defendant, however, was not convicted of criminal sexual penetration of a minor. He was convicted of two counts of attempted CSPM. The crime of attempt to commit a felony "consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." Section 30-28-1.

**{11}** While other jurisdictions recognize two types of an "impossibility" defense, "legal impossibility" and "factual impossibility," we do not distinguish between the two. *See State v. Lopez*, 1983-NMSC-069, ¶¶ 4, 8, 100 N.M. 291, 669 P.2d 1086. Instead, we treat a defendant in accordance with the facts as he believes them to be. *See Id.* ¶¶ 8-9 ("The fact that the pocket was empty should not insulate the pickpocket from prosecution for an attempt to steal." (internal quotation marks and citation omitted)). Therefore, if the evidence established that Defendant believed he was going to meet a child under thirteen years of age in the apartment for the purpose of engaging in criminal sexual penetration, the State was not required to present evidence that there was an actual child involved in the sting operation.

**{12}** Here, Defendant admitted during his police interview that he drove to the apartment believing he was going to meet an eleven-year-old child for the purpose of performing and receiving oral sex. According to Defendant he brought the orange Fanta to make the child feel comfortable with him and to exchange the soda for sex with her. Defendant's admissions, along with the evidence consisting of his text messages in which he stated his intent to engage in cunnilingus and fellatio with the eleven-year-old child, were sufficient evidence from which a reasonable jury could conclude that Defendant believed he was going to engage in two acts of sexual penetration with an 11-year-old child. *See Lopez*, 1983-NMSC-069, ¶¶ 8-9. Therefore, treating the facts as Defendant believed them to be, impossibility was not an applicable defense to attempted CSPM.

**{13}** Defendant next contends the evidence was insufficient to demonstrate that he "took a substantial step beyond mere preparation" to support his convictions for attempted CSPM. The crime of attempt has two essential elements: (1) "[a]n overt act in furtherance of but failing to consummate the goal crime"; and (2) "the intent to commit the goal crime." *State v. Green*, 1993-NMSC-056, ¶ 21, 116 N.M. 273, 861 P.2d 954. "[E]ven slight acts in furtherance of the crime will constitute an attempt." *State v. Brenn*, 2005-NMCA-121, ¶ 14, 138 N.M. 451, 121 P.3d 1050 (alteration, internal quotation marks, and citation omitted); *State v. Trejo*, 1972-NMCA-019, ¶ 8, 83 N.M. 511, 494 P.2d 173 ("The overt act must be more than preparation; it must be in part execution of the intent to commit the crime. However, slight acts in furtherance of that intent will constitute an attempt.").

**{14}** We recognize that the line between preparation and the overt act is not always clear and is heavily dependent upon the surrounding factual circumstances. *See Brenn*, 2005-NMCA-121, ¶ 23. We apply the following principal when called upon to review the sufficiency of evidence in attempt convictions:

> In order that there may be an attempt to commit a crime, whether statutory or at common law, there must be some overt act in part execution of the intent to commit the crime. The act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory, and it need not be the last proximate act to the consummation of the offense attempted to be

perpetrated. However, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparation or solicitation is made. Slight acts done in furtherance of that design will constitute an attempt. No definite rule can be laid down by which an act might be characterized as overt in any particular case. The general principle of law concerning attempts must be applied in each case as nearly as it can with a view to substantial justice.

*State v. Lopez*, 1969-NMCA-115, ¶ 3, 81 N.M. 107, 464 P.2d 173, *overruled on other grounds by State v. Ruffins*, 1990-NMSC-035, ¶ 17, 109 N.M. 668, 789 P.2d 116.

**{15}** *Brenn*, 2005-NMCA-121, further informs the analysis we undertake when reviewing the sufficiency of evidence supporting an overt act. The defendant in *Brenn* appealed her conviction for attempted trafficking in methamphetamine by manufacture on the grounds that the evidence was insufficient to show that she had taken on overt act towards completion of the crime. *Id.* ¶ 1. The facts showed that the defendant drove to a motel room in a rented vehicle. *Id.* Officers knocked on the motel room door, and once inside observed the defendant and another person in the room smoking methamphetamine. *Id.* ¶ 2. A later search of the room revealed a large amount of pseudoephedrine pills, an ingredient used in the manufacture of methamphetamine. *Id.* ¶¶ 2, 9. Officers also found a large amount of iodine in the back of the car the defendant drove to the motel room, another ingredient used in the manufacturing of methamphetamine. *Id.* ¶¶ 2, 7-11. Based on this evidence, we held that "[t]he jury could infer that [the d]efendant was attempting to manufacture methamphetamine because there is no legal purpose for [the d]efendant to possess such a large amount of pseudoephedrine and iodine." *Id.* ¶ 15. We further stated, "In light of [the d]efendant's failure to adequately explain the large amount of unpackaged pseudoephedrine, the jury could disbelieve [the d]efendant's explanation that the iodine was purchased for resale." *Id.* ¶ 16. We concluded that the possession of large amounts of pseudoephedrine and iodine, renting a car to purchase the iodine at a low price, renting the motel room and storing the pseudoephedrine therein, and smoking methamphetamine in the motel room were sufficient actions "to constitute an overt act in furtherance of the manufacture of methamphetamine[,]" and affirmed the defendant's conviction. *Id.* ¶ 23.

**{16}** We now review Defendant's acts and determine whether they were sufficient to support the jury's determination that he crossed the line from mere preparation to committing an overt act. "View[ing] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[,]" *Cunningham*, 2000-NMSC-009, ¶ 26, a reasonable jury could have concluded that Defendant committed overt acts towards committing CSPM.

**{17}** The evidence revealed that Defendant responded to an advertisement inviting people to a "glory hole party." Once he discovered children ages nine and eleven would be involved in the party, Defendant expressed his interest in "playing" with the children prior to the date of the party. A reasonable jury could infer from this evidence that

Defendant possessed a lewd and lascivious attraction to children and that he wanted to engage in sex acts with children. The evidence further revealed that when the undercover officer granted Defendant's request to attend a pre-party meeting with Kim, Defendant expressed his wish to engage in cunnilingus and fellatio with her. From this, a reasonable jury could conclude that Defendant intended to engage in fellatio and cunnilingus with an eleven-year-old-child.

**{18}** On the evening of the arranged pre-party meeting, Detective Walsh, posing as Stu Wall, provided Defendant with an address to an apartment complex and notified Defendant that he would be provided with the apartment number once he arrived. Defendant advised Stu Wall that he was on his way but forgot to bring a gift. Stu Wall suggested that Defendant instead bring orange Fanta. Defendant drove to a convenience store hoping to purchase orange Fanta only to discover it was closed. While looking for an open convenience store, Defendant began texting Stu Wall asking for photographs of eleven-year-old Kim. After learning that Defendant was having trouble finding an open store selling orange Fanta, Stu Wall provided Defendant suggested locations that might be open. Defendant spent twenty to twenty-five minutes driving to different convenience stores looking for orange Fanta. A reasonable jury could conclude from this evidence that Defendant was preparing for his sexual encounter with Kim, because Defendant admitted that he intended to give Kim the orange Fanta to make her feel comfortable with him and exchange the soda for sex. After locating an open store and purchasing two bottles of orange Fanta, Defendant drove to the address provided to him by Stu Wall. Once there, he parked in the parking lot and texted Stu Wall that he was "here."

**{19}** A reasonable jury could conclude that Defendant's arrival at the apartment complex, with "gifts" he intended to give the child in exchange for sex and in order to facilitate her comfort with him, along with his announcement of his arrival at the apartment complex where he believed the child was waiting for him and would engage in sex acts with him, constituted sufficient overt acts beyond mere preparation towards committing criminal sexual penetration of a minor. *See State v. Stettheimer*, 1980-NMCA-023, ¶ 25, 94 N.M. 149, 607 P.2d 1167 (reviewing the elements of the completed crime to determine if the defendant had committed an overt act towards completion of that crime). A reasonable jury could conclude that these acts constitute a substantial step in both meeting the child and substantial movement toward the commission of the offense. Based on the foregoing, we conclude that the evidence supported Defendant's convictions for attempted CSPM.

## II.     The General/Specific Statute Rule Does Not Apply To This Case

**{20}** Defendant argues that the State should have charged him with attempted child solicitation by electronic communication device, because it is the crime "[t]hat best fits what happened in this case." This issue is properly raised for the first time on appeal. *See State v. Perea*, 2001-NMCA-002, ¶ 8, 130 N.M. 46, 16 P.3d 1105 (allowing a general/specific statute argument to be raised for the first time on appeal), *aff'd in part, vacated in part,* 2001-NMSC-026, 130 N.M. 732, 31 P.3d 1006. "The interpretation of a

statute is an issue of law that is subject to de novo review." *State v. Cleve*, 1999-NMSC-017, ¶ 7, 127 N.M. 240, 980 P.2d 23 (alteration, internal quotation marks, and citation omitted).

**{21}** "The goal of the general/specific statute rule in the context of criminal law is to determine whether the Legislature intends to punish particular criminal conduct under a specific statute instead of a general statute." *State v. Santillanes*, 2001-NMSC-018, ¶ 11, 130 N.M. 464, 27 P.3d 456. In the context of criminal law, "the general/specific [statute] rule assists courts in determining whether the Legislature intended to limit the discretion of the prosecutor in charging under one statute instead of another for the commission of a particular offense." *Id.* ¶ 10. However, the charging discretion of a prosecutor is extensive, "[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his or her discretion." *Id.* ¶ 21 (alteration, internal quotation marks, and citation omitted). "Therefore, in applying the general/specific statute rule, courts must be wary not to infringe unnecessarily on the broad charging authority of district attorneys, and [appellate courts] will require clear evidence of an intent by the Legislature to limit prosecutorial discretion." *Id.*

**{22}** The general/specific statute rule requires a two-step analysis to determine if the Legislature intended to divest the prosecutor of charging discretion. However, that analysis is only triggered when "two statutes, one general and one spec[ific], punish the *same criminal conduct*[.]" *Cleve*, 1999-NMSC-017, ¶ 17 (emphasis added); *State v. McWhorter*, 2005-NMCA-133, ¶ 11, 138 N.M. 580, 124 P.3d 215 (stating that "[t]he general/specific rule is applicable when two statutes prohibit the same conduct"). Thus we must first determine whether both statutes could have punished Defendant's conduct in this case.

**{23}** Section 30-9-11(A) and (D)(1) provide:

Criminal sexual penetration is the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.

Criminal sexual penetration in the first degree consists of all criminal sexual penetration perpetrated: (1) on a child under thirteen years of age[.]

Section 30-37-3.2 provides:

Child solicitation by electronic communication device consists of a person knowingly and intentionally soliciting a child under sixteen years of age, by means of an electronic communication device, to engage in sexual intercourse, sexual contact or in a sexual or obscene performance, or to

engage in any other sexual conduct when the perpetrator is at least four years older than the child.

**{24}** Section 30-9-11, prohibits *the act* of sexual penetration, and does not include the element of solicitation or the use of an electronic device. We can conceive of numerous activities that could be charged as attempted CSPM without use of an electronic communication device to solicit a child to engage in CSPM or to solicit a child at all.

**{25}** Section 30-37-3.2, on the other hand, prohibits solicitation of a child under the age of sixteen, by an electronic communication device, to engage in one or more listed sex acts. *See State v. Ebert*, 2011-NMCA-098, ¶ 13, 150 N.M. 576, 263 P.3d 918 (analyzing the statute as it existed at the time of the alleged violation, Section 30-37-3.2 (2005), in a vagueness challenge and determining that the statute "ensures that communications are criminalized only when knowingly made to a child under the age of sixteen"). In its current form, Section 30-37-3.2 prohibits child solicitation by electronic communication devices, as opposed to solely computers, and requires that the defendant is four years older than the child, as opposed to three. Otherwise, the statute prohibits the same conduct today as when we decided *Ebert.* Accordingly, communications remain criminalized only when knowingly made to a child under the age of sixteen or to a peace officer posing as a child under sixteen years of age. *See Ebert*, 2011-NMCA-098, ¶ 21 (providing that it is not a defense that the intended victim of the defendant was a peace officer posing as a child under sixteen years of age); *see also* Section 30-37-3.2(E).

**{26}** Under the facts of this case, Defendant could not have been convicted of attempted child solicitation by electronic communication device when he communicated only with a person he believed to be the child's step-father and not the child. Thus, the general/specific statute rule does not apply and we reject Defendant's contention that he should have been charged with attempted child solicitation by electronic communication device.

### III. Two Convictions for Attempted CSPM Violate Double Jeopardy Protections

**{27}** Defendant argues that his convictions for attempted CSPM violate double jeopardy protections. "The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted). Multiple punishment problems arise in both unit-of-prosecution claims, "in which an individual is convicted of multiple violations of the same criminal statute[,]" and double-description claims, "in which a single act results in multiple charges under different criminal statutes." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Defendant raises a unit-of-prosecution challenge to his convictions because he is claiming his two convictions under the same statute were based on unitary conduct and both arose from a single intent. "A double jeopardy claim is a question of law that we review de novo." *Id.* ¶ 6.

**{28}** To determine whether Defendant committed two attempts, "[t]he relevant inquiry . . . is whether the Legislature intended punishment for the entire course of conduct or for each discrete act." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 40, 136 N.M. 309, 98 P.3d 699 (alteration, internal quotation marks, and citation omitted). There are two steps to the unit-of-prosecution analysis. *Bernal,* 2006-NMSC-050, ¶ 14. "First, we review the statutory language for guidance on the unit of prosecution. If the statutory language spells out the unit of prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete." *Id.* (citation omitted). "If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Id.* "In examining the indicia of distinctness, courts may inquire as to the interests protected by the criminal statute, since the ultimate goal is to determine whether the [L]egislature intended multiple punishments." *Id.* "Finally, if we have not found a clear indication of legislative intent, we apply the 'rule of lenity,' a presumption against imposing multiple punishments for acts that are not sufficiently distinct." *State v. DeGraff*, 2006-NMSC-011, ¶ 32, 139 N.M. 211, 131 P.3d 61.

**{29}** Defendant argues that neither the attempt statute, Section 30-28-1, nor the CSPM statute, Section 30-9-11(A) and (D)(1), defines a unit of prosecution and that his actions did not have sufficient indicia of distinctness. The State concedes Defendant's acts were not separated by sufficient indicia of distinctness to justify multiple punishments, but contends that this Court need not reach the second step of the analysis because the CSPM statute defines the unit-of-prosecution unambiguously to allow prosecution for both cunnilingus and fellatio.

**{30}** We begin our analysis looking first at the specific statutes for attempted CSPM, Section 30-9-11 (CSP), and Section 30-28-1 (attempt). Section 30-9-11, defines criminal sexual penetration of a minor as:

> [T]he unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.
>
> Criminal sexual penetration in the first degree consists of all criminal sexual penetration perpetrated: (1) on a child under thirteen years of age[.]

Section 30-9-11(A), (D)(1). *Attempt to commit a felony "consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." Section 30-28-1.*

**{31}** Unit of prosecution claims in the context of Section 30-9-11 are reviewed by reference to *Herron,* in which our Supreme Court observed that the language of Section 30-9-11 "does not indicate unambiguously whether the [L]egislature intended to create a separate offense for each penetration occurring during a continuous sexual assault." *Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624. Our

Supreme Court went on to "conclude that Section 30-9-11 cannot be said as a matter of law to evince a legislative intent to punish separately each penetration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others." *Id.* ¶ 15; *cf. State v. Wilson*, 1993-NMCA-074, ¶ 9, 117 N.M. 11, 868 P.2d 656 (resorting to *Herron* factors to determine whether multiple acts of CSP including anal intercourse and fellatio during a continuous attack constituted separate offenses). *Section 30-28-1, attempt, similarly does not "provide guidance as to the proper unit of prosecution for multiple attempts." Bernal*, 2006-NMSC-050, ¶ 19.

**{32}** Thus, we turn to the next step of our unit-of-prosecution analysis to determine whether Defendant's acts were separated by sufficient indicia of distinctness to justify multiple punishments under the same statute. We consider the following factors in determining whether an act is distinct: (1) temporal proximity of the acts, (2) the location of the victim during each act and whether there was movement or repositioning of the victim, (3) the existence of an intervening event, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims. *Herron*, 1991-NMSC-012, ¶ 15.

**{33}** *Herron* additionally indicated that "[e]xcept for penetrations of separate orifices with the same object, none of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under Section 30-9-11." *Id. Therefore, under Herron, two convictions for CSPM, one for cunnilingus and the other for fellatio, would constitute separate offenses.*

**{34}** *Here, however, Defendant was convicted of two counts of attempted CSPM and the applicable Herron factors do not weigh in favor of multiple punishments. Under the first factor, the temporal proximity of the acts, Defendant expressed his intent to engage in cunnilingus and fellatio with Kim in the same text* and he prepared for both acts of anticipated CSPM by looking for and purchasing two bottles of orange Fanta at the same time. He then arrived with both bottles of orange Fanta in the parking lot after being told that Kim was in the apartment, intending to give them to Kim in exchange for sex. Defendant's intent did not change during the events preceding his arrest. *See State v. Haskins*, 2008-NMCA-086, ¶ 20, 144 N.M. 287, 186 P.3d 916 ("[The d]efendant's conduct may fairly be construed to indicate one continuous intent[.]").

**{35}** As to the location of the victim, Defendant believed Kim to have been in the apartment, but since Kim was non-existent there was no physical contact, movement or repositioning of Kim. As to intervening and sequencing of events and acts, again, given that Kim was non-existent there were no intervening or sequencing of events or acts. Finally, each of Defendant's attempted CSPM convictions involved only one fictitious victim. Based on the foregoing, the evidence supports only one conviction for attempted CSPM.

**CONCLUSION**

**{36}** We affirm one of Defendant's convictions for attempted CSPM, vacate the other, and remand to the district court for resentencing consistent with this opinion.

**{37}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KRISTINA BOGARDAS, Judge**