Craig v. Parsons, 22 N. M. 293.

---

[No. 1887, December 11, 1916.]

CRAIG et al. v. PARSONS et al.

SYLLABUS BY THE COURT.

1. A contract, providing that one party agrees to sell land of another party for a certain sum, for which first party shall receive a certain stipulated commission, held to create the relation of principal and agent between the parties.

P. 295

2. The expression "to sell," used in contract of brokerage, defined.

P. 295

3. Where an agent sells land of his principal at a price in excess of the price stipulated and agreed upon between the principal and the agent, and fraudulently appropriates the difference to himself, or permits others to appropriate it, he becomes liable to the principal for such difference, together with the value of the commission received by him.

P. 296

4. Where a person, with full knowledge of the facts, aids and abets a broker in the commission of an act of fraud upon the principal, he is liable to the latter for loss sustained thereby.

P. 299

Appeal from District Court, Chaves County; Richardson, Judge.

Action by Harry V. Craig and another against Ralph M. Parsons and another. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

GEO. S. DOWNER of Albuquerque and REID & HERVEY and ED. S. GIBBANY, all of Roswell, for appellants.

R. C. REID of Roswell, for appellees.

OPINION OF THE COURT.

HANNA, J.—This is an appeal from the district court of Chaves county by Ralph M. Parsons and M. M. Baumgartner from a judgment against them in the sum of $3,600. The complaint in this case, in substance, alleged that the appellees, prior to April 6, 1912, were the owners of a certain tract of land in Chaves county, and on the date last mentioned entered into a contract in writing with Parsons, whereby the latter agreed to sell said premises for $6,100, for which he was to receive from the owners of the land a certain model Ford automobile; that a sale of said premises was made by Parsons to C. L. Herman for $9,000; that appellants concealed from appellees that they had received $9,000 for said land and

fraudulently appropriated the difference between the contract price of said land and the price actually received therefor to their own uses, and that the commission specified in said contract was paid by the owners to Parsons in ignorance of the fraud of the appellants. The time of the discovery of the alleged fraud was also alleged. The separate answer of the appellants denied the fraud alleged in the complaint, and alleged that the appellant Parsons sold the said lands to Baumgartner for $6,100, for which sum Parsons accounted to the owners, and that Baumgartner thereupon sold the said land to Herrman for $9,000. Under those facts it was contended that Parsons had fulfilled his contractual obligations, and that Baumgartner owed no duty whatever in the premises to the appellees. The contract of April 6, 1912, is in the following words:

"Parsons agrees to sell the place for $6,100 and to close the deal within 30 days from April 6 (unless time is extended by Craig): $4,000 of the purchase price to be paid in cash and the balance, $2,000 in one year at 10%; $100 having been already paid, the receipt of which is hereby acknowledged. $500 of the $4,000 has been deposited in the First National Bank of Roswell and if the deal is not consummated, by fault of present owners, then in that event, it is to be divided equally between Craig and Parsons. If the provisions of the above contract are carried out Parsons is to receive a new model T 4-door Ford car as his commission for effecting the sale. It is further understood that Parsons' customer may have the right, instead of making a note for the deferred payment of $2,000, to pay the same in cash."

[1, 2] One of the contentions made by the appellants is that this contract does not create Parsons the agent of the owners of the said land, but simply authorizes him to make a sale of the property. Upon that theory it is claimed that the evidence shows that Parsons sold the land to Baumgartner for the contract price, and even though he (Parsons) assisted in making the sale to Herrman for $9,000, he cannot be held liable to the appellees, because he owed them no duty in the premises. The contract hereinbefore referred to clearly provides for the agency of Parsons in the matter of the sale for the owners of the property, unless the meaning to be ascribed

to the words "to sell" changes the evident intention of the parties as elsewhere expressed in the instrument. Parsons, by the terms of the instrument, was to receive his specified commission from the owners for effecting a sale of the property to his "customer." The evident intention of the parties that Parsons was to act as the agent of the owners in effecting a sale of the property is not changed because of the use in the contract of the words "to sell." In Keim v. Lindley (N. J. Ch.) 30 Atl. 1063, 1073, a leading case, the court, speaking with reference to the meaning to be given to the words "to sell" and the like, said:

"It seems to me to amount to no more than this: That the mere employment of an ordinary real estate broker to effect a sale of a parcel of land, even though the price and terms be prescribed, does not amount to giving present authority to such broker to conclude a binding contract for the same. Moreover, such authority is not usually to be inferred from the use by the principal and broker in that connection of the terms 'for sale' or 'to sell,' and the like. Those words, in that connection, usually mean no more than to negotiate a sale by finding a purchaser upon satisfactory terms."

See, also, 4 R. C. L. "Brokers," § 14, Bacon v. Davis, 9 Cal. App. 83, 98, Pac. 71; Duffy v. Hobson, 40 Cal. 240, 6 Am. Rep. 617; Gault Lumber Co. v. Pyles, 19 Okl. 445, 92 Pac. 175, 176; Stemler v. Bass, 153 Cal. 791, 96 Pac. 809, 811, and note, 17 L. R. A. (N. S.) p. 211, where many cases are collected.

While the terms employed in such contracts control in the construction to be given them by the courts, cases of some similarity, holding that the relation of principal and agent was created by the act of the parties, are Chezum v. Kreighbaum, 4 Wash. 680, 30 Pac. 1098, 32 Pac. 109; and Tate v. Aitken, 5 Cal. App. 505, 90 Pac. 836, 839.

[3] Holding, as we do, that at all times material hereto Parsons was the agent of the appellees, the question next presented is whether Parsons is liable under the facts disclosed by the evidence and the findings of the court. The appellants insist that their version of the transaction is the correct one, but there is substantial evi-

dence to sustain the conclusions of the trial court, and therefore we must assume that those conclusions are correct. The trial court found that the record failed to disclose that Parsons appropriated to himself any of the excess of the purchase price. It also held that the sale of the premises was made to Herrman and not to Baumgartner. This finding is contained in the trial court's memorandum opinion, and conflicts with the judgment of the court, which found that all the allegations of the complaint were sustained by the evidence. The evident conclusion of the court, however, was that while Parsons did not appropriate to himself any of the excess purchase price, he was liable to the principal by virtue of his conduct in selling the property to Herrman for $9,-000 and concealing from appellees the real price paid therefor. In Duncan v. Holder, 15 N. M. 323, 107 Pac. 685, the Territorial Supreme Court said:

"The value in such cases [cases where principal sues agent for money had and received] is quite immaterial, for the reason that the agent is not employed with regard to the value of the property, but by the terms of his employment he is charged with the duty of selling it at a price fixed by his principal, irrespective of its value, and the law places upon the agent his duty to account to his principal for any advantage which he may secure in the line of his employment; that is, even if the property is placed in the agent's hands to sell at a certain price, and he receives a greater price, he is bound to account for it."

Appellants' argument that appellees had no cause for complaint, because they received for their land all that they asked for it, is clearly without merit under the foregoing authority. Where the doctrine in the foregoing cases is applied, the courts hold that the principal may recover from the agent, not only the difference in the price paid to the principal for the land and the price obtained by the agent and concealed from the principal, but also the value of the commission paid by the principal to the agent. Deter v. Jackson, 76 Kan. 568, 92 Pac. 546. The principle underlying this phase of the doctrine is that the agent's fraudulent conduct prevents him from receiving or retaining any benefit whatever from the tran-

saction.  In the case of Duncan v. Holder, supra, the agent had actually received and converted to himself the excess of the purchase price paid to his principal, whereas such excess was not actually converted by the agent in the case at bar.  The question, then, is whether an agent is liable for his fraudulent conduct where he does not convert the excess of the purchase price, but permits another to convert it.  The cases are numerous where a broker is held liable on the theory of breach of duty, even though he obtains no pecuniary benefit on account of his conduct, one of such cases being Brown v. Carpenter, 142 Ky. 676, 134 S. W. 1150.  The following statement in Emmons v. Alford, 177 Mass. 470, 59 N. E. 126, is authority for the conclusion that Parsons is liable to appellees, notwithstanding the finding of the court that he received no part of the excess purchase price paid by Herrman:

"For a broker employed to sell land to understate to his principal an offer which he has received. with intent to appropriate, or to help some one else to appropriate, the difference between the amount as he states it and the amount actually offered is an actionable wrong, if the fraud succeeds, for which substantial damages can be recovered in case they can be proved."

In Powers v. Black & Baird & Hartman, 159 Pa. 153, 157, 28 Atl. 133, Black and Baird, brokers, were held liable in damages for the loss suffered by appellee, although the said brokers were shown not to have received any of the proceeds of the sale of the real estate, except their commissions.  These cases are ample authority for holding Parsons liable in this case, notwithstanding the fact that he received none of the proceeds of the sale to his own use.

In March, 1912, appellees verbally listed their land for sale with Parsons, who was a real estate broker.  Parsons immediately corresponded with Baumgartner for the purpose of having the latter procure a purchaser for the land, in a sum in excess of the price at which the land was listed by the appellees.  The listing price was $6,100, and the price at which Baumgartner was advised to attempt

to sell the property was $6,500. In the following month Baumgartner accompanied Herrman to Chaves county from Illinois, where the latter was shown the lands of the appellees. Parsons quoted this land to Herrman at $9,-200, but subsequently advised him that the owner would sell for $9,000. This offer Herrman accepted, executing an instrument which the parties understood would bind him to purchase on those terms. Baumgartner became a a party to this instrument at the direction of Parsons. After this contract or instrument was executed Parsons and Harry V. Craig executed the instrument hereinabove set out. This contract specified $6,100 as the purchase price. It appears that Parsons subsequently orally agreed to change the contract selling price from $6,100 to $6,-250. Parsons delivered the equivalent of $6,250 to appellees, and appellees delivered to Parsons the commission agreed upon. Under these facts and the authorities, the trial court was not in error in rendering judgment against Parsons. The question as to the amount of that judgment will be considered hereafter in this opinion.

[4] After the land was listed with Parsons, Baumgartner was advised by him to obtain a purchaser for $6,-500, in which event he (Parsons) would obtain a new automobile at cost. Parsons said that Baumgartner could unload this place for $7,500 spot cash easily, thus making a $1,000 offhand, and urged Baumgartner to exert himself and "line up a customer. * * * send or bring him down at once—this thing is going to sell right away as it is a snap, and you ought to get the commission, $1,-000. See!" Baumgartner was advised to "get on the band wagon and come in for your share of the spoils." The correspondence clearly indicated that it was arranged between these two persons that Baumgartner should procure a person who would purchase the property at a much greater price than $6,500, and that Baumgartner would receive all that he could influence the purchaser to pay above that sum. Prior to the execution of the deed for said property by appellees to Herrman, but subsequent to the execution of the contract between appellees and Parsons, the latter wrote Baumgartner, saying in part:

"I have a copy of the contract with Herrman and can understand plain English. 'I get $4,000 cash and note for one year $2,500, 8% secured by mortgage'—you get everything else in sight."

If the statement of Parsons contained in the foregoing quotation be true, Parsons would get $250, or its equivalent, more than the price called for in his broker's contract, and Baumgartner would profit to the extent of $2,500, or its equivalent. The trial court, in effect, found that Baumgartner profited by this transaction to the same extent that appellees were damaged, namely, $3,600, and there is substantial evidence to sustain the finding that Baumgartner participated in the fraud and became liable. However, the question as to the amount of the judgment rendered against Baumgartner will be considered under another point.

The evidence fully establishes that Baumgartner had full knowledge of all the material facts, and that he participated in this arrangement, whereby appellees were defeated of a portion of the purchase price paid by Herrman for said land. The question of law which is presented is whether a third person, not in privity with the principal, is liable to the latter for his participation with the agent or broker in the commission of an act of fraud upon the principal. In Mechem on Agency (2d ed.) § 1233, it is said:

"In practically every case wherein the principal has proximately suffered loss, the principal may maintain an action of tort against the agent based upon the latter's breach of duty. In such an action he may join, as codefendants, third persons who have colluded or conspired with the agent to defraud the principal."

The cases of Tibbs v. Zirkle, 55 W. Va. 49, 46 S. E. 701, 104 Am. St. Rep. 977, 981, 2 Ann. Cas. 421,; Holmes v. Cathcart, 86 Minn. 213, 92 N. W. 956, 60 L. R. A. 734, 97 Am. St. Rep. 513, and Easterly v. Mills, 54 Wash. 356, 103 Pac. 475, 28 L. R. A. (N. S.) 952, 956, assume that participation by third persons in the fraud of the agent makes the former persons liable to the principal, but do not directly so decide. This question, however, was squarely passed upon in Boston v. Simmons,

150 Mass. 461, 23 N. E. 210, 6 L. R. A. 629, 15 Am.
St. Rep. 230, 232. Simmons was an officer of a water
board of the city of Boston, and Wilson assisted him in
fraudulently selling to the board a reservoir site for a
sum in excess of that which would have been sufficient to
purchase the land in the absence of such fraud. The court
said:

"The fact that he (Simmons) acted according to the aver-
ments in the declaration in connection with another party * *
* * does not diminish his own responsibility; while the other,
who participated in the scheme, and who has knowingly
aided and abetted in the transaction, and shared its profits
in pursuance of their agreement so to do, becomes a wrong-
doer with him. * * * Where an agent purchased prop-
erty for his principal, and falsely represented that he ha
paid for it a larger sum than he had actually paid, it was held
that he would be liable for such overplus. There is no rea-
son why any one who has intentionally co-operated wit
him, and has enabled him to commit the fraud, should not be
equally liable."

See, also, Powers v. Black & Baird, cited supra; Em-
mons v. Alvord, supra; Perry v. Hayes, 215 Mass. 296,
102 N. E. 318; Hickman v. Sawyer, 216 Fed. 281, 284,
132 C. C. A. 425.

Baumgartner participated in the scheme whereby the
appellees were defrauded, with full knowledge of the ma-
terial facts, and we see no good reason why he should not
be held to be equally liable with Parsons for the damage
done the appellees.

The court rendered judgment against appellants joint-
ly in the sum of $3,600, apparently on the theory that
appellants received $9,000 for the land and accounted for
but $6,100. The appellants contest the right of the court
to render judgment in that sum. The appellants proffered
no requested findings, nor took any proper exception to
any finding made by the court, but appellees do not in-
sist that the appellants are in no position to raise a ques-
tion with respect to the amount of the judgment; hence
we will consider it. The evidence shows that appellees
actually received the equivalent of $6,250 for the land,
not $6,100, the basis used by the court in computing dam-
ages. The Ford car was delivered to Parsons, not to

Baumgartner; hence its value is properly chargeable against only Parsons. It was found to be of the value of $700. Thus Parsons became liable to appellees in the total sum of $3,450, not $3,600, and Baumgartner in the total sum of $2,750, not $3,600.

The judgment of the trial court will be affirmed upon the filing of remittiturs by appellees in accordance herewith, within 20 days from date; otherwise the judgment of the trial court will be reversed, and remanded for a new trial; and it is so ordered.

ROBERTS, C.J., and PARKER, J., concur.