[ No. 2092, Jan. 28, 1918.]
## McBRIDE v. CAMPREDON.
[Rehearing Denied March 2, 1918.]
[L. R. A. 1918D, 407.]

### SYLLABUS BY THE COURT.
1. A real estate broker, after finding a prospective purchaser of property at a given price, intrusted to him for

sale, cannot, without disclosing the offer to his principal, purchase the property at a reduced price and sell the property to the purchaser at the enhanced price and retain the profit so realized.                                                      P. 328

2.   While the law will permit a mortgagee to purchase the equity of redemption of a mortgagor, yet to give validity to such a sale it must be shown that the conduct of the mortgagee was in all things fair and frank, and that he paid for the property what it was worth.                 P. 329

Appeal from District Court, Socorro County; Mechem, Judge.

Action by Millard F. McBride against Julius Campredon.   Judgment for plaintiff, and defendant appeals.   Affirmed.

M. C. SPICER, of Socorro, for appellant.

Parties occupied relation of mortgagor and mortgagee.   Such relation did not preclude latter from purchasing property.

Palmer v. Albuquerque, 19 N. M. 285; 27 Cyc. 991; see, 27 Cyc. 974; Moore v. Calkins, 30 Pac. 582, 29 Am. S. R. 128; Hoffman v. Marchall, 64 Am. Dec. 637; Chowning v. Cox, 10 Am. Dec. 530; McVey v. Tousley, 105 N. W. 932 (S. D.).

A. R. MACDONELL, of Socorro, for appellee.

The rule of equity is that a purchase by a trustee or agent of the particular property of which he has the sale or in which he represents another, whether he has an interest in it or not, per interposition personam, carries fraud on the face of it.

Michaud v. Gired, 11 Law Ed. 1076.

Equity will enforce in the most rigid manner good faith on the part of the trustee, and vigilantly watch any acquisition by him, in his individual character, or property which has ever been the subject of his trust.

McBride v. Campredon, 24 N. M. 323.

Stephen v. Beall, 22 Wall. (U. S.) 329.

In cases at law the party must lose all advantage gained by fraud, as well, as the money that may have been paid him.

Stvall v. Farmers Mechanics Bank, 47 Am. Dec. 85.

## OPINION OF THE COURT.

ROBERTS, J.   This suit was brought by appellee to recover the sum of $300 alleged to be due from appellant by reason of the sale of certain ranch property owned by appellee.   Trial was had in the district court of Socorro county, and the court, after making certain findings of fact and stating conclusions of law, entered its judgment for $300 in favor of appellee and against appellant, from which judgment this appeal is prosecuted.

Appellant has stated 12 assignments of error which he discusses under several different points, based upon findings of fact made by the court and requested findings refused, and conclusions of law stated.   It is not necessary to set forth in detail the points discussed.   We shall state the facts as they appear to us from a careful review of the evidence, and apply the principles of law applicable to such facts, which, when so done, will dispose of all meritorious questions presented by appellant.   The facts are as follows:

In June, 1915, appellee was the owner of a possessory right to certain unsurveyed government land, together with improvements thereon.   At this time he was indebted to the Chambon estate, which was operating a general store of which appellant was the general manager. Appellant had also become his surety on certain promissory notes in the sum of $300 or $400, and appellee also owed appellant, individually, certain sums of money.   The total indebtedness owing by appellee to appellant, and for which he was surety, amounted to probably between $1,000 and $1,200.   To secure appellant for becoming surety on the notes to the bank and the other indebtedness owing to appellant and the Chambon

estate, appellee executed and delivered to appellant a quitclaim deed for his possessory rights to the unsurveyed government land and to the improvements thereon and certain personal property. At the time of making the deed appellant gave to appellee a contract signed by him, by which he agreed to reconvey the premises to appellee upon the payment of the indebtedness secured thereby within one year from the date of the execution of the deed. All parties agree that the deed, while absolute on its face, was, in legal effect, a mortgage.

At the time of the execution of the deed appellee says in his testimony that appellant agreed with him that the premises therein described were of the value of $2,500, and that appellee should endeavor to make a sale of the same for such sum, and that he (appellant) would undertake to assist appellee in bringing about such sale. That he so agreed to undertake to assist appellee in making the sale is not denied by appellant in his testimony.

In September or October a Mr. Cox was desirous of purchasing a place for a cattle ranch. He had had some conversation with a man named Taylor prior thereto relative to appellee's ranch. At the time in question a certain real estate agent in Socorro, named Bunton, had made an agreement with McBride, appellee, that he would undertake to find a purchaser for the possessory claim and improvements in question. Bunton saw appellant and talked with him relative to his agreement with McBride to find a purchaser, and told appellant that as he held the legal title he would not undertake to find a purchaser unless appellant would agree to pay him his commission. This, he says, appellant agreed to do. Thereafter Bunton took Cox to see the McBride ranch and improvements. They saw appellee and talked with him about the sale, and offered him $1,800 for the possessory claim and improvements, which appellee refused to accept. Before returning to Socorro they visited a neighbor of appellee's, a man

named Taylor. Taylor was on very intimate terms with appellee, and told Bunton and Cox·that if they wanted to buy the ranch they should let him buy it for them. He said he thought he could buy the ranch for $1,800. Either at Taylor's ranch or after the parties reached Socorro Cox gave ·a blank check to Taylor, signed by himself, with instructions to fill in the amount of $200 and the name of the payee in case he was able to buy the ranch for $1,800. Taylor accompanied ·Bunton and Cox to Socorro, and Cox and Taylor talked to appellant relative to the proposed purchase of the property by Cox. Appellant and Taylor went to the McBride place to see him relative to the sale of the ranch. While possibly there is no direct evidence of the fact that appellant knew that Taylor had the blank check and was authorized to pay $1,800 for the possessory claim and improvements, all the facts and circumstances in evidence go to show that he had such knowledge. Taylor and appellant failed to find McBride at home, and appellant returned to Socorro with instructions to Taylor to see appellee at once, and tell him that appellant was willing to pay him $1,500 for his possessory claim and improvements. Taylor saw appellee and informed him of appellant's willingness to pay him the sum of $1,500 for his claim and improvements, but did not tell him that Cox was willing to pay $1,800 for the ranch, or that he had the check for $200 with which to make the first payment. Taylor also told appellee that it was to his interest to sell the ranch to appellant; that if he did not sell it at that time a judgment owned by a man named Montoya would take his equity of redemption, and Taylor also made other statements to him relative to some government scrip which he had purchased. Appellee accompanied Taylor to Socorro, and the two men visited appellant, and appellant agreed to pay appellee the sum of $1,500 for the ranch property, deducting from such sum the indebtedness secured by the deed, and to pay the balance in cash: Appellee agreed to accept the offer, and $50 was paid in cash at that time,

and the indebedness was liquidated by appellant, and later the balance due appellee, amounting to $300, was paid by appellant by check. No new deed was executed by appellee, but it was agreed between the parties, orally, that the equity of redemption should be surrendered by appellee, and that the former deed should pass fee-simple title to appellant. A short time afterwards Taylor delivered to appellant Cox's check for $200, and later, when Cox returned to Socorro, appellant delivered to him a quitclaim deed, Cox's wife being named as grantee, to the possessory claim and improvements, and received from Cox the balance of the purchase price, amounting to $1,600. Appellant and Taylor divided the profit of $300 equally. Some two or three months later appellee discovered the deception that had been practiced upon him, and instituted this action to recover the sum of $300, being the difference in amount between the sum paid by appellant and the amount for which appellant sold the premises.

[1] The judgment of the district court awarding appellee a recovery of said sum of $300 was correct upon either of two theories. When appellant undertook with appellee at the time of the execution of the deed in question to assist appellee in making a sale of the premises, the relationship of principal and agent came into existence, and appellant was bound to observe the utmost good faith toward his principal in dealing with the property in question. A real estate broker, after finding a prospective purchaser of property at a given price, intrusted to him for sale, cannot, without disclosing the offer to his principal, purchase the property from the principal at a reduced price and sell the property to the purchaser at the enhanced price and retain the profit so realized. The law will not countenance such a breach of fair dealing. Craig v. Parsons, 22 N. M. 293, 161 Pac. 1117. In 2 C. J. 706, it is said:

"As a general rule an agent is not permitted to enter into any transaction with his principal on his own behalf respecting the subject-matter of the agency, unless he acts

with entire good faith and without any undue influence or imposition, and makes a full disclosure of all the facts and circumstances attending the transaction."

See, also, 2 Mechem on Agency, § 2411.

Here, prior to the transaction in question appellant had refused to purchase the property from appellee, and had stated that he did not want it at any price, but that he would help appellee sell it, and apparently was endeavoring to do so, because he agreed with Bunton that he would pay him a commission if he would effect a sale. When he discovered, however, that Cox was willing to pay $1,800 for the property, and that Taylor had in his possession a check for $200 which he could turn over to appellant, and thereby assure him that the sale would be completed, without disclosing the facts to his principal, he induced him by questionable means to surrender to him the equity of redemption for the sum of $1,500. Clearly he had no right to retain the profit under the principles discussed.

[2] But assuming, for the sake of argument, that appellant was not the agent of appellee, and that the principle applicable to such relationship did not apply, yet the judgment of the court is nevertheless sustainable. Appellee was induced to surrender to appellant his right of redemption to the property in question by undue influence and by unconscionable advantage taken of appellee by appellant. Taylor was intrusted by appellant with the duty of communicating to appellee his offer of $1,500 and inducing the appellee to accept the offer, with an understanding between Taylor and appellant that they would divide the profits should they succeed in inducing appellee to surrender his equity of redemption. Taylor represented to appellee that, unless he sold to appellant at once at the price offered, he would lose his equity of redemption under a judgment which had either been taken or was about to be taken against him; also that he might have trouble with the United States government, or other parties, over some scrip transaction. While the law will permit

a mortgagee to purchase the equity of redemption of a mortgagor, yet to give validity to such a sale it must be shown that the conduct of the mortgagee was in all things fair and frank, and that he paid for the property what it was worth. As stated in Villa v. Rodrigues, 12 Wall. 323, 20 L. Ed. 406:

"He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears or poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. Where confidential relations and the means of oppression exist, the scrutiny is severer than in cases of a different character. The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered and never intended to reclaim is of no consequence. If there is vice in the transaction, the law, while it will secure to the mortgagee his debt, with interest, will compel him to give back that which he has taken with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved require that such should be the law."

See, also, Wagg v. Herbert, 19 Okl. 525, 92 Pac. 250; 27 Cyc. 1374. In the case of Cassem v. Heustis, 201 Ill. 208, 66 N. E. 283, 94 Am. St. Rep. 160, the court said:

"This court has held, it is true, that, where an absolute deed of land is given as security for an indebtedness, a bona fide agreement may be made between the motgagee and the mortgagor, by the terms of which the equity of redemption of the mortgagor may be extinguished and the entire estate vested in the mortgagee, but such an agreement for the extinguishment of the equity of redemption will never be sustained, unless the transaction is fair and unaccompanied by any oppression or fraud or undue influence. A court of equity will never allow the mortgagee to avail himself of his position to obtain an advantage over the mortgagor by securing such an agreement for the vesting of the entire estate in himself. Contracts between the mortgagor and mortgagee for the purchase or extinguishment of the equity of redemption are always regarded with jealousy by courts of equity. West v. Reed, 55 Ill. 242; Seymour v. Mackay, 126 Ill. 341 [18 N. E. 552]; Scanlan v. Scanlan, 134 Ill. 630 [25 N. E. 652]. In order to determine whether such a contract for the extinguishment of the equity of redemption, if it exists, is or is not fair and just to the mortgagor, the relations between the parties

will be inquired into. Sutphen v. Cushman, 35 Ill. 186; Conant v. Riseborough, 139 Ill. 390 [28 N. E. 789]; Burton v. Perry, 146 Ill. 71 [34 N. E. 60]."

See, also, Lynch v. Ryan, 132 Wis. 271, 111 N. W. 707, 112 N. W. 427. In this case appellant having parted with the legal title and the purchaser not having notice of the fraud practiced upon appellee, clearly appellant is liable to appellee for the profits realized by him in the transaction.

For the reasons stated, the judgment of the court awarding appellee a recovery of the profits made by appellant was right, and its judgment will be affirmed; and it is so ordered.

PARKER, J., concurs. HANNA, C. J., being absent, did not participate.