Bernard GELFAND, Plaintiff-Appellee,

v.

HORIZON CORPORATION, a Delaware corporation, Defendant-Appellant.

No. 80–1878.

United States Court of Appeals, Tenth Circuit.

April 12, 1982.

Ronald F. Horn, Keleher & McLeod, P. A., Albuquerque, N. M. (Robert H. Clark and Russell Moore, Keleher & McLeod, P. A., Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

Turner W. Branch, Branch, Perkal & Associates, P. A., Albuquerque, N. M., for defendant-appellant.

---

Before SETH, Chief Judge, DOYLE, Circuit Judge, and ANDERSON,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

Gelfand sued Horizon Corporation, a real estate concern, which was engaged in the owning and marketing of real estate around the country. Gelfand began working for Horizon in 1966. He served first as a real estate salesman and later as a sales manager. In recent times he was transferred to New Mexico and became the district manager in charge of Paradise Hills and Rio Communities which were located near Albuquerque. He had been paid a salary, but in 1977 it was decided by Horizon to pay him a lower salary, plus commissions and overrides based on real estate sales in his district. The percentages paid to the district manager were called overrides and were established by an inter-office memorandum in 1976.

Gelfand was terminated in January, 1979. Horizon's management apparently felt that Gelfand's success was benefiting him more than the company. Soon after that Gelfand claimed Horizon owed him commissions and overrides on some completed transactions. These Horizon refused to pay. Eventually, however, Gelfand filed suit in the Federal District Court in New Mexico, alleging that he was owed parts of some twelve different sales. Trial was to the court and it was concluded that Gelfand was entitled to commissions of eleven of the twelve sales, and judgment was entered in favor of Gelfand in the sum of $140,322.88.

On this appeal Horizon raises two points. First, that Gelfand was guilty of a breach of fiduciary duties with respect to one of the sales. There does not seem to be much controversy on this; it is the amount of the offset against Gelfand's claim which is in dispute. Horizon maintains that as a result of the breach of the fiduciary relationship, Horizon was entitled to an offset not only for profits accruing directly to the agent,

---

* Honorable Aldon J. Anderson, Chief Judge, United States District Court, District of Utah, sitting by designation.

but also for profits which accrued to third parties allied with the agent. The trial court gave damages based upon only those profits which had accrued directly to the agent.

The other issue presented pertains to a different transaction in which Gelfand claims a commission. Gelfand, as manager in Albuquerque, was not the procuring cause of the sale of the Paradise View Apartments. This was a sale outside the course of usual business, between Horizon management and the purchaser. On this account Horizon contends that Gelfand is not entitled to any commission.

The above described issues are the matters to be determined on this appeal.

## A. The Barranca Estates

This is the property which Gelfand sold to a corporation in which his wife had a one-third interest. Horizon was not apprised of the details of this transaction. The purchaser corporation was apparently formed for this particular conveyance; it was organized almost contemporaneously with the sale.

Horizon maintains that due to the breach of the fiduciary relationship, Gelfand was not entitled to a commission, but that Horizon was entitled to set off against Gelfand's other claims all of the profits that were made by the dummy corporation on the Barranca Estates transaction. The trial court, after hearing all the evidence, concluded that Horizon was entitled to an offset, but only as to the one-third share of the profits from the sale. On this appeal, Horizon contends that three-thirds should have been the award.

The Barranca Estates tract had been for sale for some time (one or two years) prior to Gelfand's arrival in New Mexico. The home office of Horizon in Tucson had set the sales price at $165,000. On November 10, 1977, Gelfand, working as an agent of Horizon, sold an option to buy the tract to B & C Enterprises, a New Mexico corporation, which is mentioned above, and in which Gelfand's wife and son were principals. B & C Enterprises had been incorpo-

rated October 27, 1977. Gelfand's wife had advanced the $2,500 price of the option herself. Within the ensuing month, B & C sold the option to Professional Homes, and received a $57,500 profit. Professional Homes paid B & C $60,000 for the option, and then exercised it, and paid Horizon $165,000 for the property. The profit was split three ways; $20,000 went to Mrs. Gelfand, and the balance was divided between Stewart Braums and David Simms, who were the other partners in B & C. B & C apparently went out of business immediately after this transaction.

■■ The law regarding fiduciary relationships in New Mexico is generally similar to the laws throughout the United States. An agent occupies a relationship in which trust and confidence is the standard. When the agent places his own interests above those of the principal there is a breach of fiduciary duty to the principal. *See Rice v. First National Bank in Albuquerque*, 50 N.M. 99, 171 P.2d 318, 320 (1946). The fiduciary is duty bound to make a full, fair and prompt disclosure to his employer of all facts that threaten to affect the employer's interests or to influence the employee's actions in relation to the subject matter of the employment. *Iriart v. Johnson*, 75 N.M. 745, 411 P.2d 226, 227–28 (1965); *Mitchell v. Allison*, 54 N.M. 56, 213 P.2d 231, 233–34 (1949); *McBride v. Campredon*, 24 N.M. 323, 171 P. 140, 141 (1918); Annotation, Liability of Real Estate Broker or Agent to Principal for Concealing or Failing to Disclose Offer, 7 A.L.R.3d 693, 695–96 (1966).

In the present case, the facts giving rise to the breach of the fiduciary relationship are undisputed. That Gelfand failed to disclose the relevant facts to Horizon at the time of the transaction cannot be questioned. Also, it is certain that the company would have objected to the sale to B & C Enterprises which had been formed the previous month. The violation of the fiduciary relationship was, indeed, blatant and the court was entirely correct in concluding that there was a breach of fiduciary duty owed by Gelfand to Horizon.

■ What should be the remedy for breach of fiduciary duty? The trial court refused to give Gelfand a commission on the sale. This was plainly correct. *See Canon v. Chapman*, 161 F.Supp. 104, 111 (D.Okl.1958), holding that a broker is not entitled to compensation where he acts adversely to his principal's interest; *Craig v. Parsons*, 22 N.M. 293, 161 P. 1117, 1119 (1916). In this latter case an agent's fraudulent conduct prevented him from receiving or retaining any benefit whatever from the transaction. *Cf. Iriart v. Johnson, supra*, 411 P.2d at 230, holding that a commission is a profit which the principal is entitled to recover. *See also* Douthwaite, Profits and Their Recovery, 15 Villanova L.Rev. 346, 373–374 (1970). Where an agent seeks to recover compensation growing out of the same transaction in which he was guilty of being disloyal to his principal, the court is justified in denying the compensation, and the equitable principle applicable to the fiduciary that he is not to profit from his own wrong comes into play.

We now turn to the issue whether the wife can be forced to return the $20,000 profit made in the transaction. We conclude that this is all part of the breach of fiduciary relationship, and that Gelfand was using his wife for the indirect purpose of gaining a profit which could not be given to him directly. Surely the principal is entitled to recover that sum of money. *Iriart v. Johnson, supra*, 411 P.2d at 229 (fiduciary wrongfully used the principal's property to make a profit and was held accountable for the profit as constructive trustee); *McBride v. Campredon, supra*, 171 P. at 141–42 (same); Bogert, Trusts and Trustees, Sec. 543, 543(A), 543(T), at 218, 225–26, 231–32 (rev. 2d ed. 1978) (profit made by fiduciary's wife is attributable to fiduciary and may be taken from him).

■ But the court's refusal to hold Gelfand liable for the profits made by the third parties is a more difficult problem.

It would appear from the cases that a fiduciary who has, by violating his obligation of loyalty, made it possible for others to make profits, can himself be held accountable for that profit regardless of whether he has realized it. *See* Douthwaite, Profits and Their Recovery, *supra*, at 370; Bogert, Trusts and Trustees, Sec. 543(V) at 393 (rev. 2d ed. 1978). *See also Mosser v. Darrow*, 341 U.S. 267, 271–73, 71 S.Ct. 680, 682–83, 95 L.Ed. 927 (1951). There a trustee was surcharged for profits made by employees who traded in securities of trust subsidiaries. The theory is that the trustee is not to be free to authorize others to do what he is forbidden. There are a good many other cases which give support to this proposition. *See In Re Johnson*, 518 F.2d 246 (10th Cir.); *Morrissey v. Curran*, 650 F.2d 1267, 1281–83 (2nd Cir.); *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971); *In Re Combined Metals Reduction Co.*, 557 F.2d 179, 196–97 (9th Cir. 1977); *Craig v. Parsons*, 22 N.M. 293, 161 P. 1117, 1119 (1916); *Coleman v. Moody*, 52 Tenn.App. 138, 372 S.W.2d 306 (1963); *In re Hogan's Will*, 37 Misc.2d 806, 237 N.Y.S.2d 361 (Sur.Ct.1962). The liability of the fiduciary and of the profiting third party in such cases is said to be joint and several. Douthwaite, Profits and Their Recovery, *supra*, at 371. *See also Canadian Ingersoll-Rand Co. v. D. Loveman & Sons, Inc.*, 227 F.Supp. 829, 832 (N.D.Ohio 1964); *Commodity Credit Corp. v. Transit Grain Co.*, 157 F.Supp. 527, 540 (S.D.Texas 1957); *Craig v. Parsons, supra*, 161 P. at 1120. The cases hold that the purpose for restoring profits is to discourage potential conflicts of interest and duty; the complaining principal or employer need not prove that any loss was caused by fiduciary's misconduct. Douthwaite, Profits and Their Recovery, *supra*, at 335; Dobbs Handbook on the Law of Remedies, 683–84 (1973). This differs from the damages remedy, the purpose of which is to compensate the plaintiff for proven loss. The restitution of profits remedy serves primarily as a deterrent. Bogert, Trusts and Trustees, *supra*, Sec. 543 at 218. Requiring the fiduciary to disgorge his own unjustly acquired gains serves a punitive as well as a compensatory function if no loss to the beneficiary is proven. To require him to account for the gains of others still

more plainly operates to deter him and other fiduciaries from disloyalty. *Id.*; D. Dobbs, Handbook on the Law of Remedies, *supra*, at 224.

So the trial court could have held Gelfand accountable for the $37,500 profit made by Braums and Simms. We do not hold that the trial court was incorrect in refusing to exercise its broad equity powers to this extent. Several reasons for the court's staying its own hand are suggested. First, the court is not obligated to compel a fiduciary to reimburse the beneficiary for third party profits. Thus, the authorization for such a remedy is not a mandatory one. Rather, it partakes of a discretionary equitable character. *See, e.g., Morrissey v. Curran*, 650 F.2d 1267, 1282 (2nd Cir. 1981) (surcharge of fiduciary may be permitted when warranted by the facts); *In re Combined Metal Reduction Co.*, 557 F.2d 179, 194 (9th Cir. 1977) (equity courts have the "power" to surcharge trustees). Second, the flexibility and concern for doing justice that are central to equity are another factor. *See* Restitution and Implied Contracts, 66 Am.Jur.2d Sec. 3. It requires a case by case evaluation of all relevant circumstances whenever restitution of third party profits is sought. *See generally McGrath v. Hilding*, 41 N.Y.2d 625, 394 N.Y.S.2d 603, 606, 363 N.E.2d 328, 331 (1977); *Buchanan v. Brentwood Federal Savings & Loan Association*, 457 Pa. 135, 320 A.2d 117, 126 (1974). From consideration of the evidence and the court's findings, it is our conclusion that the facts support the trial court's decision.

One factor which deserves prominent mention is that Horizon did not have a policy which forbade land purchases by employees or required disclosure in such situations. Other Horizon executives had bought property from Horizon for their own business interests. As a matter of fact, the evidence shows that Horizon employees could obtain a 20% discount on purchases of unimproved property. With respect to the sale of Barranca Estates to B & C Enterprises, Horizon's management executives were not wholly ignorant of the circumstances surrounding the transaction.

The Tucson central office set the $165,000 sales price for the tract, and Horizon's Vice-President in Charge of Sales, S. P. Abrams, signed the B & C option purchase agreement himself.

Further elements supporting the trial court's decision are the non-existence of a strict trusteeship applicable to the two-thirds interest, *see Mosser v. Darrow*, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951) (trustee was held liable for profits made by employees, in part because the case involved "a strict trusteeship, not one of those quasi-trusteeships in which self-interest and representative interests are combined"), and the susceptibility of the other two B & C partners, Braums and Simms, to an action to recover profits (though Braums now lives in Florida). *See, e.g., Craig v. Parsons, supra*, 22 N.M. 293, 161 P. 1117, 1119 (1916). There are special rationales for holding fiduciaries liable for third-party profits, such as the possibility of reciprocal tipping arrangements. But *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2nd Cir. 1971), is probably inapplicable to a case having facts like the facts at bar. There is no evidence that Braums and Simms were in any position to return Gelfand's favor through questionable real estate transactions or other means. In addition, the Barranca Estates transaction appears to be an isolated incident in a long term of useful service by Gelfand to Horizon. *See* Douthwaite, Profits and Their Recovery, *supra*, at 374 (total forfeiture may be inappropriate where transaction complained of was isolable from fiduciary's conduct in general).

B. *How Much Should be Paid to Gelfand as Commission on the $900,000 Sale of the Paradise View Apartments?*

 Gelfand's original claim was that he is entitled to three percent, or a total of $27,000. Horizon maintained that he is entitled to, at most, three-tenths percent, or $2,700. However, the trial court found the correct figure to be one percent, and awarded $9,000. Horizon reiterates its original position on this appeal.

· An important factor to consider here is that Gelfand was not directly involved in the Paradise View Apartments sale. Any claim that he has is based upon his supervisory position. He testified that an associate of a real estate broker, McCanna Real Estate, had expressed an interest in the property while he and Gelfand were playing golf together. Gelfand then contacted Horizon's manager, who set a price on the property. Eventually a sale was negotiated between Horizon's management in Tucson, the broker, McCanna Real Estate, and the ultimate purchasers, a Mr. and Mrs. Cox. Both parties substantially agree that Gelfand did not actually introduce the purchaser to the seller, and hence was not the immediate or procuring cause of the sale under New Mexico law. *Wilson v. Sewell*, 50 N.M. 121, 171 P.2d 647 (1946); *Adams v. Thompson*, 87 N.M. 113, 529 P.2d 1234 (Ct. App.1974).

Since Gelfand was not the direct sales representative he would not be entitled to the sales commission as such. Nevertheless the trial court ruled that Gelfand, as district manager of the district where the sale transpired, was entitled to a one percent "override", irrespective of the extent of his involvement in the transaction. The memorandum which is referred to above, of June 28, 1976, established the commissions generally applicable to Gelfand's work. It provided that the district manager would receive a one percent override on developed commercial property sold at the established offering price.

The trial court's findings of fact that Gelfand was entitled to a one percent override pursuant to the parties' compensation agreement is to be disturbed only if clearly erroneous. Such a ruling is permissible only if the finding is unsupported by substantial evidence, *Federal Security Ins. Co. v. Smith*, 259 F.2d 294, 295 (10th Cir. 1958), or "the reviewing court * * * is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

It is Horizon's position that Gelfand was bound by his contention at trial that the Paradise View Apartments sale was subject to the same commission formula employed in the sale of the Rio Motel and Apartments. That formula provided for a total commission of five percent, to be divided as follows:

Forty percent of the five percent (or two percent of the total sales price) would go to Horizon; the other sixty percent of the five percent (or three percent of the total sales price) would be further divided, ninety percent going to the salesman and five percent each to the district manager and broker.

This would have provided Gelfand with a sum less than the one percent of the sales price. Gelfand originally contended that he was entitled to the entire sixty percent of the five percent, or three percent of the total, because he acted as a salesman, broker and district manager. Horizon insists that Gelfand is entitled to, at most, the ten percent of six percent of five percent, or three-tenths percent of the total.

The trial court, in our view, was correct in arriving at the one percent figure. No special written agreement governed this transaction, unlike the Rio Motel sale. Horizon cites testimony that all commissions on sales of improved property with buildings were individually determined by the company either before or after the fact. But it can just as well be reasoned that the Paradise View property fits within the parties' definition of developed commercial property in the 1976 memo that established applicable commission rates. There is evidence in support of the conclusion that the 1976 memo governed the sale. In the purchase offer for the Paradise View Apartments, the seller, Horizon, agreed to pay to the broker, McCanna, a $54,000 commission, which is six percent of the sales price of $900,000. That is the same amount that the broker or sales representative would receive under the 1976 memo. One could logically infer that Horizon was bound to pay an additional one percent override to the district manager, Gelfand, who had played

some role in the sale, even though a non-Horizon broker had acted as sales representative. After all, this was in accordance with the obligations which Horizon undertook in the 1976 memo. Moreover, other evidence supports the proposition that Horizon management believed that Gelfand was entitled to a one percent commission on the sale. A letter written to Gelfand in February, 1979, by the then President of Horizon, Sidney Nelson, included in its compilation of the commissions to which Gelfand was thought to be entitled the following notation:

A. Paradise Apartments, for a price of $900,000—Commission 1%

So it must be concluded that the trial court did not make any mistake in finding that Horizon management's initial acknowledgement of the amount owed Gelfand on the Paradise View Apartments sale was at least persuasive.

It is our conclusion that substantial evidence supports the trial court's decision across the board. Accordingly, even if this court can find some support for the appellant's position, the ruling of the trial court should stand. "If, from established facts, reasonable men might draw different inferences, appellate courts may not substitute their judgment for that of the trial court." *Federal Security Ins. Co. v. Smith, supra,* at 295.

Judgment of the trial court should be, and the same is, hereby affirmed.