Donald GUY, Plaintiff,

v.

DUFF AND PHELPS, INC., et al., Defendants.

No. 84 C 2813.

United States District Court,
N.D. Illinois, E.D.

Dec. 31, 1985.

James J. Moylan, Chicago, Ill., for plaintiff.

Edward C. Fitzpatrick, C. Joseph Yast, Shelley L. Rice, Steven E. Handler, Lord, Bissel & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Donald Guy ("Guy") initially sued Duff and Phelps, Inc. ("Duff & Phelps") and its Chairman of the Board and Chief Executive Officer Claire Hansen ("Hansen"), charg-

ing securities law violations (federal and state), breach of fiduciary duty and common-law fraud—all arising out of Guy's resale of his Duff & Phelps stock to the company upon termination of his employment. Duff & Phelps responded in part with a counterclaim against Guy, charging (Counterclaim ¶ 11) it had been damaged by more than $10,000 by Guy's:

1. breach of his fiduciary duties; and
2. misappropriation of Duff & Phelps' facilities for use in Guy's own business.

On July 12, 1985 this Court granted Duff & Phelps' motion for summary judgment on each of Guy's claims. Guy has now moved under Fed.R.Civ.P. ("Rule") 56 for summary judgment on Duff & Phelps' counterclaim. For the reasons stated in this memorandum opinion and order, Guy's motion is denied.

### Facts [1]

Duff & Phelps is an Illinois corporation in the service business: providing investment research, credit ratings, financial consulting and investment management. In 1978 Guy joined Duff & Phelps as a vice president responsible for developing Duff & Phelps' computer capability and for studying, teaching and implementing new methods of quantitative analysis in investment research and management.

In 1981 (while still employed by Duff & Phelps) Guy applied to the Commodities Futures Trading Commission ("CFTC") to become a registered commodities trading advisor. He then began a small commodity trading business without informing anyone at Duff & Phelps. He operated the business from his home and then from an office in the basement of a friend's home (Guy Dep. 6–7, 292–94). He did some of the work at Duff & Phelps' offices between 7:00 and 7:30 a.m., before Duff & Phelps' regular business hours (*id.* at 154). During that time he did however use Duff & Phelps' telephones and occasionally its

computer (*id.* at 131, 154, 171–72), and he frequently used Duff & Phelps' telephones during its regular business hours (Hansen Aff. ¶ 3; Guy Dep. 171).

By July 1983 Guy had 50 to 60 customers and managed portfolios with total assets of about $4 million (Guy Dep. 105–06, 108, 124). Earnings from his business exceeded $95,000 in 1982 and $43,000 during the first 8½ months of 1983 (D. Ex. A).

Duff & Phelps did not learn of Guy's business until late May or early June 1983, when Hansen questioned Guy about the early morning phone calls he often received at work (Guy Dep. 148–51; Hansen Dep. 33–34). Guy told Hansen about the business and provided him with documents at his request (Guy Dep. 150–51; Hansen Dep. 35–44). About a month later Hansen told Guy he would have to abandon his own business if he wanted to stay with Duff & Phelps (Guy Dep. 163–64), giving Guy another month to think over his choice (*id.* at 164). On July 29 Guy met with Hansen again and said he would not give up his own business (Hansen Dep. 61). Hansen then fired him effective December 31, 1983. That date was later advanced to September 15, 1983 by agreement (at least in the sense Guy was given a choice between a September 1 and 15 departure) (Guy Dep. 188–89, 245).

### Subject Matter Jurisdiction

Guy maintains Duff & Phelps' counterclaim is permissive in Rule 13(b) terms, thus requiring an independent federal jurisdictional basis. Guy then says the counterclaim falls outside this Court's diversity jurisdiction because Duff & Phelps has not alleged in good faith an amount in controversy exceeding $10,000. That notion is wholly without merit.

■ Counterclaim ¶¶ 6 and 7 charge Guy violated his fiduciary duties owed to Duff & Phelps as his employer. Guy contends

---

**1.** Familiar Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact. *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). For that pur-

pose this Court must view the evidence (including any reasonable inferences) in the light most favorable to the nonmovant—here Duff & Phelps. *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984).

he has not breached any such fiduciary duty. Because Duff & Phelps cannot recover any damages under that theory if Guy is right, he reasons Duff & Phelps lacks the requisite amount exceeding $10,-000 in controversy.

Guy's argument totally misperceives the thrust of the jurisdictional amount requirement. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (footnotes omitted) remains the leading authority on that subject:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

Here Duff & Phelps' breach-of-fiduciary-duty claim seeks to recover: (1) all Guy's profits (over $100,000) plus (2) damages for the unauthorized use of Duff & Phelps' equipment. Unquestionably that puts more than the jurisdictional amount into controversy.[2]

Guy claims his proffered evidence establishes Duff & Phelps must lose on the merits. But even if he were right (and the later discussion shows he is not), his bizarre view of subject matter jurisdiction would convert every successful summary judgment motion by a diversity-jurisdiction defendant (and even many a final judgment for such a defendant after trial) into a jurisdictional dismissal. Pursued to its logical end, Guy's position would foreclose federal courts from ever ruling for defendants on the merits in diversity cases, for the very decision that a plaintiff could not recover on those merits would automatically telescope the case into a zero amount in controversy and thus defeat subject matter jurisdiction.[3]

### Breach of Fiduciary Duty

This Court will therefore treat Guy's summary judgment motion solely as an attack on the merits of Duff & Phelps' claim. Guy asserts as a matter of law he did not breach any fiduciary duty owed to Duff & Phelps. Duff & Phelps counters by saying genuine issues of material fact preclude summary judgment.

*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill. App.3d 671, 683, 20 Ill.Dec. 160, 169, 379 N.E.2d 1228, 1237 (1st Dist.1978) states one version of the relevant rule:[4]

> While acting as an agent or employee of another, one owes the duty of fidelity and loyalty; accordingly, a fiduciary cannot act inconsistently with his agency or trust; *i.e.*, solicit his employer's customers for himself, entice coworkers away

2. This would of course be so if Duff & Phelps could arguably recover *all* of Guy's profits on a constructive trust theory, and it would also be so if Duff & Phelps could recover even 15% of those profits on the basis (discussed later) Guy had devoted to his private venture that percentage of his workday (owed entirely to Duff & Phelps).

3. This ruling as to the emptiness of Guy's jurisdictional-amount attack, coupled with the fact complete diversity exists, makes it unnecessary to resolve the parties' dispute as to the permissive-v.-compulsory nature of the counterclaim (see Guy Mem. 6–8; Duff & Phelps Mem. 7–9; Guy R. Mem. 5–6).

4. Illinois' choice-of-law principles (applicable of course to this diversity case) look to Illinois substantive law, for everything about the parties and the counterclaim is Illinois-based.

from his employer, or appropriate his employer's personal property....

Much the same articulation is contained in the decision Guy Mem. 9 quotes, *Patient Care Services, S.C. v. Segal*, 32 Ill.App.3d 1021, 1029, 337 N.E.2d 471, 478 (1st Dist. 1975):

> The duties that an officer or director owe to his corporation are so well established as to need no citation of authority to support them. They include the requirement of undivided, unselfish, and unqualified loyalty, of unceasing effort never to profit personally at corporate expense, of unbending disavowal of any opportunity which would permit the fiduciary's private interests to clash with those of his corporation.

Guy advances three contentions in support of his position he did not breach those standards:

> 1. His commodity trading activities did not compete with Duff & Phelps' business.
>
> 2. He did not devote time belonging to Duff & Phelps to his own business.
>
> 3. He did not use Duff & Phelps' name in his commodity trading business.

This opinion will deal with each argument in turn.

### 1. Competition with Duff & Phelps

■ Guy advances two reasons why his commodity trading business does not compete with any of Duff & Phelps' activities. Though he might perhaps ultimately prove to be right, he cannot prevail at this Rule 56 stage.

First Guy says his commodity trading business served only individual clients, while Duff & Phelps primarily served corporate and institutional clients.[5] But Hansen Aff. ¶ 11 responds:

Duff & Phelps has a division which manages money for clients. This division has approximately 100 individual clients as well as institutional clients.

That assertion alone leaves it to a factfinder's decision whether Guy's customers represented a potential corporate opportunity diverted from Duff & Phelps.[6]

Guy next points out neither Duff & Phelps nor any of its principals possesses the necessary license from CFTC to act as a registered commodities trading advisor (Guy's Statement of Material Facts ¶ 17). Hence Guy states his commodity trading activities could not compete with Duff & Phelps' business. But Duff & Phelps retorts (Hansen Dep. 99):

> Duff & Phelps manage money of individuals, for which we obtained a fee. Don Guy was managing money of individuals for which we didn't obtain a fee. That's competition.

■ That exchange highlights the nature of the parties' dispute over the competitive effect of Guy's activities. In essence they differ over the definition of the "relevant market." Guy focuses only on investment advisors in the commodities trading field. Because Duff & Phelps lacks the requisite licenses to offer advice in that area, Guy is correct in saying his business does not compete with Duff & Phelps in that limited sense.

But Guy's contention in that respect rests on the unstated assumption that each of his customers had already opted for commodities trading before Guy dealt with him or her, rather than the classical model in which the investor examines the universe of investment alternatives before actually committing funds to one choice. In the latter model, Guy's solicitation of a prospective investor, rather than disclosing his or her identity to Duff & Phelps' new-

---

**5.** Guy also asserts he and Duff & Phelps never had any clients in common (Guy Aff. ¶ 20). Duff & Phelps has not controverted that statement.

**6.** Though the parties have not addressed the issue in these terms, it appears likely the promotion of new business was not within the scope of Guy's corporate responsibilities. All the same, it would still be a fact issue (unresolved by the present papers) whether Guy's duty of undivided loyalty would call for him to bring his knowledge of live prospects to the attention of the Duff & Phelps people in its individual-account-solicitation section.

business personnel, does compete with that corporation's money management services. With the record no further fleshed out than it is now, there is at least a reasonable inference the "relevant market" is the genus of money management generally, not the species of commodities trading advice.

### 2. Guy's Use of Business Time

■ Guy Aff. ¶ 17 says:

My CTA activities never interfered with my duties or obligations at D & P. In fact, all the while I acted as a CTA, my D & P personnel reports, evaluations and the like contained high praise for my work and the performance of my duties. Further, any CTA work I did at D & P was before or after D & P's normal working hours of 8:45 a.m.—4:45 p.m.

But Guy earlier admitted he did devote some of his time to his commodity trading business during Duff & Phelps' business hours (Guy Dep. 154, 171):

Q: Okay. And then from 7:30 on, was there ever a time when you devoted your energies to your CTA business, rather than to the Duff & Phelps' business?

A: I'm sure there was.

\* \* \* \* \* \*

Q: You made phone calls that related strictly to your CTA business between the regular working hours of 8:45 and 4:45 at Duff & Phelps, didn't you?

A: Sometimes, yes.

Hansen testified (Hansen Dep. 56) Guy admitted spending 15% of his Duff & Phelps workday on his own business. Substantial calls by Guy to brokers during business hours are reflected in Duff & Phelps telephone records (D. Ex. C).

Guy contends the amount of time he actually spent on his own activities is irrelevant because he always finished his job assignments at Duff & Phelps. On that issue, though, Duff & Phelps answers (Hansen Aff. ¶¶ 8, 9):

8. Guy received above average performance evaluations about a one and one half year period beginning in December of 1980. After that, there were many complaints about his failure to complete projects on time. Guy was continually behind on assignments, and the problem continued for about one year until Duff and Phelps finally had to take measures to correct it. In or about July of 1982, a computer committee consisting of key Duff and Phelps personnel was established to monitor Guy's progress on his assignments. Guy had to report to this computer committee weekly as to whether he had completed assignments on schedule.

9. During the period of Guy's employment at Duff and Phelps, Duff and Phelps was engaged in a number of activities that required the development of new computer programs. There was not always sufficient programming capability to meet these needs. Analysts frequently had to develop their own programs because they could not get assistance from the computer department.

It is at least a reasonable inference from those statements that Guy's pursuit of his own business interests cut back on the time he devoted to Duff & Phelps assignments at the very time Duff & Phelps' need for Guy's services had increased. *Gelfand v. Horizon Corp.*, 675 F.2d 1108, 1110 (10th Cir.1982) teaches:

An agent occupies a relationship in which trust and confidence is the standard. When the agent places his own interests above those of the principal there is a breach of fiduciary duty to the principal.

In sum, Duff & Phelps has created a factual issue on that issue too.

### 3. Guy's Use of Duff & Phelps Property

Guy urges he never used Duff & Phelps' name to solicit business. All the record discloses in that respect is that Guy did identify his address on customer powers of attorney as "c/o Duff & Phelps, Inc." (D. Ex. B). That might perhaps suggest a kind of trading (albeit minimal) on Duff & Phelps' name and reputation.

■ More to the point, however, Complaint ¶ 11 really charges Guy with having

misappropriated Duff & Phelps' "facilities," so Guy's effort to shift scrutiny to his use or nonuse of the corporate name is really a red herring. On the misappropriation-of-property issue, Guy admits he used Duff & Phelps' computer equipment to analyze his commodity trading data (Guy Aff. ¶ 22). Guy argues that use benefited Duff & Phelps by allowing him to evaluate the efficacy of Duff & Phelps' statistical computer programs. But Duff & Phelps effectively responds with a "thanks, but no thanks" answer (Donehey Aff. ¶ 7):

> The use of commodities data to check the types of statistical programs Duff and Phelps uses is not necessary. These statistical programs are easily verified by comparison to textbook proofs. It is unlikely that using commodities data to check programs could be beneficial to Duff and Phelps.

Any misappropriation of Duff & Phelps' property—its name or its computer or both—to advance his own interests would breach Guy's duty of loyalty to Duff & Phelps. *ABC Trans National Transport,* 62 Ill.App.3d at 683, 20 Ill.Dec. at 169, 379 N.E.2d at 1237. Once again Duff & Phelps has posed a question for the trier of fact.

### Conclusion

Duff & Phelps' evidentiary submissions establish the existence of several genuine issues of material fact. Guy's motion for summary judgment is denied. Finally, given the nature of the factual disputes, the case does not seem a particularly apt one for a set of Rule 56(d) specifications.